## JONES v. THE TERRITORY OF OKLAHOMA.

1. CRIMINAL LAW—*Gaming Tables—Use of Prohibited.* The prohibition of § 1, art. 56, ch. 25, of the Statutes of 1893, do not alone extend to those who deal or play or conduct the various games of chance therein specified, but such prohibition extends to the carrying on or opening of any such prohibited game, and the use therein of any device. And any table or other device, necessarily adapted to the use and necessarily used in the carrying on of any such game, is a gambling device in contemplation of law; and the setting up or using of such table or device is prohibited; and an information

under § 5, of said article, charging the defendant with permitting certain tables to be set up and used for the purpose of gambling in rooms occupied by him and under his control, charges a public offense.

2. TRANSFERS FROM PROBATE TO DISTRICT COURT—*Plea of Not Guilty not Jurisdictional Pre-requisite.* In criminal causes transferred before trial from the probate court to the district court, the jurisdiction of the district court does not depend upon the entering of a plea a not guilty before the order of transfer is made. Where a cause has been transferred and no plea of not guilty previously entered, but the transfer is by agreement of the parties, the defendant appearing in the district court and proceeding regularly to trial and the issue of not guilty is submitted to the jury, the omission of the formal entry of the plea of not guilty, is an irregularity, merely, which does not affect the substantial rights of the defendant and is not a ground for disturbing the judgment. Section 13, art. 16, of the code of criminal procedure provides that: "On an appeal, the court must give judgment without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties."

3. GAMBLING ACT—*Legality of.* Article 56, of chapter 25, of the Statutes of 1893, known as the "Gambling Act," was legally enacted by the general assemby. (*Schweizer v. Territory*, this volume, p. 297).

*Error from the District Court of Oklahoma County.*

Prosecution for permitting gambling tables to be set up and used for the purpose of gambling in a house occupied by the defendant, in his possession and under his control. Defendant being convicted appeals.

*R. G. Hays* and *J. H. Woods*, for plaintiff in error.

No appearance for defendant in error.

The opinion of the court was delivered by

TARSNEY, J.: This case was commenced in the probate court of Oklahoma county, on information filed by the county attorney, in which the defendant was charged with "permitting gambling in a house under his control in manner and form as follows: For that he did permit gambling tables, to-wit: Craps, faro and poker tables, to be set up and used for the purpose of gambling in a room, to-wit: In the lower story of what is commonly

known as the Bassett block in Oklahoma City, in said county and territory, by him, the said defendant, then occupied and of which he then had control."

The information was filed in the probate court of said county on September 7, 1895; warrant was issued on the same day and on the same day defendant was arrested and brought into court. On November 1, 1895, by agreement of the parties, it was ordered by the probate court that the cause be certified to the district court of said county, for trial. The transcript from the probate court shows that, on the seventh day of September, 1895, the fourteenth day of October, 1895, was set for the arraignment and receiving the plea of the defendant; but said transcript does not show that the defendant was arraigned in said probate court or ever entered a plea of not guilty therein. On February 8, 1896, the defendant filed, in the district court, a demurrer to the information, which was overruled, and the case-made in this cause shows the following recital: "And thereafter, to-wit: On the first day of April, 1896, this cause coming on to be tried on the issue joined on the aforesaid information, and the plea of not guilty thereto, the following proceedings were had and evidence introduced."

It further appears that a jury was empanelled in the district court, evidence both for the territory and the defendant was introduced, the court instructed the jury as to the law of the case, the cause was argued to the jury by both parties, and the jury returned a verdict of guilty.

After unsuccessful motions for new trial and in arrest of judgment, the cause was removed to this court by petition in error, and three grounds for reversal are relied upon in the brief of plaintiff in error.

1.   The court below erred in overruling the demurrer, for the reason that the information does not state facts sufficient to constitute a public offense.

2.   Because the district court had no jurisdiction to try the cause for the reason that a plea of not guilty had not been entered in said cause before said cause was transferred from the probate court.

3.   Because the statute under which the information was filed and the case tried was not legally enacted by the legislative assembly of Oklahoma Territory.

Upon the first point that the information did not state a public offense and that the demurrer was erroneously overruled, the contention of the defendant is that there is no such offense as permitting gambling tables to be set up and used for the purpose of gambling.   Section 1, art. 56, of ch. 25, of the Statutes of 1893, provides as follows:

"SECTION 1.   That every person who deals, plays or carries on, or opens or causes to be opened, or who conducts either as owner or employe whether for hire or not, any game of faro, monte, poker, roulette, craps, or any banking or percentage game played with dice, cards, or any device, for money, checks, credit, or any representative of value, is guilty of a misdemeanor, and is punishable by a fine of not less than one hundred dollars nor more than one thousand dollars, and by imprisonment in the county jail for a term not less than thirty days nor more than six months."

Section 3 of said article reads:

"SEC. 3.   Every person who deals, plays or practices in the Territory of Oklahoma, or who is in any manner accessory to the dealing, playing or practicing of a swindle known as three-card monte, or any other swindle or confidence game, play or practice, shall be deemed guilty of a felony, and upon conviction thereof, shall be punished by a fine of not less than one thousand

dollars nor more than five thousand dollars, or by confinement in the penitentiary for a term of not less than one year nor more than five years."

Section 5 of said article reads:

"SEC. 5.    Every person who shall permit any gaming table, bank, or gaming device, prohibited by §§ 1 and 3 of this act, to be set up or used for the purpose of gambling in any house, building, shed, shelter, booth, lot or other premises, to him belonging or by him occupied, or of which he has, at the time, possession or control, shall be, on conviction thereof, adjudged guilty of a misdemeanor, and punished by a fine not exceeding two hundred dollars nor less than one hundred dollars, or by imprisonment in the county jail for a term not exceeding six months nor less than thirty days or by both such fine and imprisonment in the discretion of the court."

It is under § 5 that the information in this case is drawn, and counsel for defendant contend that this section only denounces as an offense the permitting of such gaming tables to be set up as are *"prohibited"* by §§ 1 and 3 of the article, and that said §§ 1 and 3 do not *"prohibit"* the use of gambling tables, but only provide penalties against those who deal, play, carry on, open or cause to be opened or conducted the game of faro and other games in said sections specified.    While the language of these sections and the connection between the said sections are not as definite and specific as they might be, and there is some ambiguity to make plausible this contention of counsel, yet we think a fair interpretation of these several sections makes the position of counsel untenable.    We are bound to give the language used by the legislature such interpretation as will support its evident intent, if the language used is fairly susceptible of such interpretation.    That the legislature intended to prohibit the setting up or use of gambling tables, is beyond doubt, and that they intended to punish those

who should permit such tables to be set up cannot be questioned; and if § 5 did not contain the words "prohibited by §§ 1 and 3 of this act," such § 5, in itself, would be complete to prohibit persons from permitting, or to punish persons for permitting, gaming tables to be set up or used for the purpose of gambling; and the reference in § 5 to §§ 1 and 3 clearly shows that it was the legislative judgment and intent that the setting up of gaming tables or their use for gaming purposes was prohibited by the language of §§ 1 and 3. Can the language used in §§ 1 and 3 then be reasonably interpreted to support this intent and judgment? The prohibitions of § 1 do not alone extend to those who deal or play or conduct the various games of chance therein specified, but such prohibition extends to the *carrying on or opening* of any game of faro, monte, poker, roulette, craps or any banking or percentage game played with dice, cards or any device. Now, if the opening, or carrying on of any of these prohibited games involves the setting up of any tables or other devices, then the use of such tables or devices is evidently prohibited by § 1. That it is the common understanding of those charged with the duty of administering the criminal laws, especially those against gambling, that certain games as faro and poker do require the use of tables upon which they may be played, then it follows that the use of such tables is prohibited by the prohibition against the carrying on or opening of such games. Again, § 1 clearly prohibits the carrying on or opening of any game with any device and a table when necessarily adapted to the use and necessarily used in the carrying on of any such game, is a gambling device in contemplation of law, although such table may have been originally designed for and ordinarily adapted to lawful uses.

We are, therefore, clearly of the opinion that it was the intention of the legislature to prohibit the owners, occupants or persons in possession or control of houses, buildings, etc., from permitting any gaming table, bank or gaming device to be set up or used for the purposes of gambling therein; and that the language of §§ 1 and 5 above quoted, with sufficient clearness, shows such intent, and that, therefore, the information in this case did charge a public offense, and that the demurrer was rightly overruled.

II.   The second contention of counsel for plaintiff in error that the district court never obtained jurisdiction because the transfer from the probate court was ordered without a plea of not guilty having been previously entered, cannot be sustained; nor do we think that there was any such irregularity as to call for a reversal.

The probate court did not have exclusive original jurisdiction of the cause, its jurisdiction was only concurrent with that of the district court.   Original, although not exclusive jurisdiction of the subject matter of the offense charged in this information, was in the district court.   The information might have been originally filed in the district court, and that court have original jurisdiction both of the subject matter and of the person of the defendant.   Its jurisdiction did not depend upon a transfer of the cause from the probate court.   The information was filed in the district court when transferred from the probate court and the record of the district court shows the appearance of the defendant therein and a plea of not guilty, which would give to the district court full and complete jurisdiction both of the subject matter and of the person of the defendant.   But if the contention of counsel that the action having been begun in the probate court, it was necessary that a plea of not

guilty should have been entered before the cause was transferred to the district court to make the proceedings regular were conceded, would such irregularity avoid the subsequent proceedings and require a reversal of the judgment? The entering of a plea of not guilty may be prerequisite to the attaching of the right of the defendant to demand a transfer of the cause to the district court, but where the parties agree, as in this case, whether such plea had been entered or not, to transfer the cause, it cannot be said that any substantial prejudice to the rights of the defendant could result therefrom. The probate court is a court of record. The law presumes the proceedings of a court of record to be regular. It does not appear from the record in this case that the plea of not guilty was not entered. The record is simply silent as to whether it was or was not. Assuming it, however, to be a fact that the defendant was not arraigned and did not enter a formal plea of not guilty before the order transferring the cause was made, the record shows him to have been present in person and by counsel agreeing to the transfer; it shows him entering his appearance in the district court and demurring to the information, announcing himself ready for trial, going to trial before a jury regularly empanelled and sworn upon an issue of not guilty and submitting the question of his guilt to their determination. Will the omission of the arraignment and formal plea, in the probate court, avail the defendant thereafter, either on motion for new trial or in arrest of judgment? It may be conceded that at common law it would, though that may be doubtful, where the offense charged is only a misdemeanor.

By § 13, art. 16, of our code of criminal procedure, it is provided that:

"On an appeal, the court must give judgment without

regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties."

We are of the opinion that under this section the omission of the probate court to require the defendant to enter a plea of not guilty before making the order transferring the cause to the district court, if such omission occurred, could not affect the substantial rights of the defendant, and therefore is not ground for disturbing the judgment.

In a case in the state of Kansas, where the defendant was charged with burglary and grand larceny, and it was conceded that the defendant was not arraigned and did not plead to the information, it was held by the supreme court, on appeal, that, under a statute identical with ours above quoted, that such omission did not affect the substantial rights of the defendant or justify disturbing the judgment. (*The State v. Cassidy*, 12 Kan. 561).

III.    Defendant's third point, that the statute under which the information in this cause was filed, and the cause tried, was not legally enacted by the legislative assembly of the territory, was fully considered by this court in *Schweizer v. The Territory*, this volume, p. 297, 47 Pac. Rep. 1094), and the opinion in that case is herein adhered to and approved and is decisive of this point in this case.

We therefore find no error in this record and the judgment of the court below is affirmed.

All the Justices concurring.