[Crim. No. 1771. In Bank.—February 19, 1913.]

In the Matter of the Application of CHARLES ZANY for a Writ of Habeas Corpus.

HABEAS CORPUS—SUPREME COURT CANNOT TRANSFER PROCEEDING AFTER DECISION OF DISTRICT COURT OF APPEAL.—The supreme court, after the decision of the district court of appeal in a *habeas corpus* proceeding, has no power to transfer such proceeding to the supreme court for a hearing therein.

ID.—CONCURRENT POWERS OF SUPERIOR AND SUPREME COURTS IN HABEAS CORPUS.—Prior to the establishment of the district court of appeal it had always been, and it now is, the law in this state that the decision of any court in a *habeas corpus* proceeding, provided the court has jurisdiction, cannot be reviewed by any other court in any way. The right of appeal has never been given, and no other method for such review has ever been provided. With reference to such proceedings, the supreme and superior courts, to each of which was given the power to issue writs of *habeas corpus*, stood upon the same plane, neither being inferior to the other in any other sense than that a superior court in determining any such matter

would naturally follow a precedent established by the highest court in the state, if any such precedent had been established. It, however, had the *power* to disregard it, and its determination, whether in accord with the law as laid down by the supreme court or not, was an end of the particular proceeding, and in case of the discharge of the petitioner from custody was final and conclusive.

ID.—CONSTITUTIONAL GRANT OF POWER TO DISTRICT COURTS OF APPEAL. The power given by the constitution to the district courts of appeal to issue writs of *habeas corpus* is conferred in practically the same language as is used with reference to superior courts and the supreme court, and the language used must be taken as indicating the intention to confer the same power that had already been given to the superior and the supreme courts, with all the incidents thereof.

ID.—CONSTRUCTION OF CONSTITUTION—PROVISION GIVING SUPREME COURT THE APPELLATE JURISDICTION OF DISTRICT COURT OF APPEAL. The provision of the constitution that the supreme court "shall also have appellate jurisdiction in all cases, matters and proceedings pending before a district court of appeal which shall be ordered by the supreme court to be transferred to itself for hearing and decision as hereinafter provided," was not designed to create a right of appeal in any matter, or to give appellate jurisdiction to the supreme court in any matter where no right of appeal was given by some other provision of law. Its whole design was to give to the supreme court the *appellate jurisdiction of the district court of appeal* in any case, matter or proceeding, which might be legally transferred from such district court of appeal to the supreme court.

ID.—POWER TO TRANSFER PENDING CAUSE.—The provision of the constitution, that "the supreme court shall have power . . . to order any cause pending before a district court of appeal to be heard and determined by the supreme court. The order last mentioned may be made before judgment has been pronounced by a district court of appeal, or within thirty days after such judgment shall have become final therein. The judgments of the district courts of appeal shall become final therein upon the expiration of thirty days after the same shall have been pronounced," is inapplicable to *habeas corpus* proceedings.

ID.—MEANING OF PHRASE "ANY CAUSE PENDING."—The words "any cause pending" used in that provision may reasonably be construed, in the connection in which they are used, as not intending to include and as not including any matter, such as a *habeas corpus* proceeding, as to which the well settled law excludes the idea of any right of review, except where there is a lack of jurisdiction. At any rate, the power of the supreme court to order a transfer is expressly limited to "any cause *pending* before a district court of appeal." A *habeas corpus* proceeding cannot fairly be said to be so "pending" at any time after judgment by such court. Such

a proceeding is finally and definitely ended by the judgment, and if the petitioner be ordered discharged thereby, he is at once restored to liberty.

APPLICATION to the Supreme Court to transfer to it a proceeding in habeas corpus, after the decision therein of the District Court of Appeal of the Third District.

The facts are stated in the opinion of the court. The opinion of the District Court of Appeal discharging the petitioner is reported in 20 Cal. App. 360, [129 Pac. 295].

Ben. Berry, and Gordon A. Stewart, for Petitioner.

L. J. Maddux, District Attorney, and J. E. Pemberton, for Respondent.

ANGELLOTTI, J.—An order denying the application for a hearing in this court, after decision by the district court of appeal for the third district discharging the petitioner from custody, was made by this court on January 13, 1913. We deem it proper to say that the order denying the application was made without regard to the merits of the decision of the district court of appeal, which we have not considered and as to which we express no opinion, and solely upon the ground that this court has no such power of transfer in *habeas corpus* proceedings.

Such has been our ruling as to all such applications heretofore made, there having been several such applications since the establishment of our district courts of appeal. The court, however, has never heretofore stated in writing the ground upon which such denials were ordered.

It has always been the law in this state that the decision of any court in a *habeas corpus* proceeding, provided the court has jurisdiction, cannot be reviewed by any other court in any way. The right of appeal has never been given, and no other method for such review has ever been provided. We are speaking now without regard to the provisions of our constitution relative to district courts of appeal, which we will consider later. The result has been that, with reference to such proceedings, the supreme and superior courts, to each of which was given the power to issue writs of *habeas corpus,*

stood upon the same plane, neither being inferior to the other in any other sense than that a superior court in determining any such matter would naturally follow a precedent established by the highest court in the state, if any such precedent had been established. It however had the *power* to disregard it, and its determination, whether in accord with the law as laid down by the supreme court or not, was an end of the particular proceeding, and in case of a discharge of the petitioner from custody was final and conclusive. Such is still the law with relation to the superior court of the state, as was recently decided by this court in Bank, Mr. Justice Shaw writing the opinion. (See *In re Hughes,* 159 Cal. 360, [113 Pac. 684].) Where a petitioner was remanded to custody by a superior court, and the proceeding instituted in that court was thus terminated and was no longer a matter *pending therein,* he could inaugurate a *new proceeding* for relief in another court and can still do so, but is now limited in the making of a new application by statutory provision to a higher court, either the district court of appeal having jurisdiction, or the supreme court. Such was the only remedy afforded by our law to the petitioner when remanded, and, as we have said, a discharge from custody by a superior court was final and conclusive.

When our district courts of appeal were established, power was expressly conferred upon them by the constitution "to issue writs of . . . *habeas corpus*" within their respective jurisdictions. As was already the situation with reference to justices of the supreme court, each of the justices of the court of appeal was given power to issue such writs returnable "before himself." It is self-evident that by these provisions it was intended to place such courts and the justices thereof in the same position with reference to *habeas corpus* matters, that the supreme and superior courts were already in. It is not conceivable that it was intended that these appellate courts should have less power than the inferior superior courts in such matters, as would be the case if their determination in *habeas corpus* proceedings were reviewable by the supreme court. As a matter of fact, the power to issue writs of *habeas corpus* was conferred in practically the same language as is used with reference to superior courts, and the supreme court, and the language used must be taken as indicating the inten-

tion to confer the same power that had already been given to the superior and the supreme courts, with all the incidents thereof.

It is by reason of certain other provisions of the constitution relative to district courts of appeal, that reliance is placed for the claim that the supreme court may review a decision of a district court of appeal in a *habeas corpus* proceeding, although it may not review a decision of a superior court in such a matter. The first of these is the provision that the supreme court "shall also have appellate jurisdiction in all cases, matters and proceedings pending before a district court of appeal which shall be ordered by the supreme court to be transferred to itself for hearing and decision as hereinafter provided." It is obvious that it was not the design of this provision to create a right of appeal in any matter, or to give appellate jurisdiction to the supreme court in any matter where no right of appeal was given by some other provision of law. The whole design was simply to give to the supreme court the *appellate jurisdiction of the district court of appeal* in any case, matter or proceeding, which might be legally transferred from such district court of appeal to the supreme court. The other provision relied on is the following: "The supreme court shall have power . . . to order any cause pending before a district court of appeal to be heard and determined by the supreme court. The order last mentioned may be made before judgment has been pronounced by a district court of appeal, or within thirty days after such judgment shall have become final therein. The judgments of the district courts of appeal shall become final therein upon the expiration of thirty days after the same shall have been pronounced." To hold this provision applicable to *habeas corpus* proceedings would be productive of some peculiar results. As we have already seen, it would render a determination of a superior court in such a proceeding one of greater dignity and more effective than that of a district court of appeal, in so far as the possibility of any review by the supreme court is concerned. The determination of a superior court would not be so reviewable, while that of a district court of appeal could be so reviewed. Likewise, it would make the decision of a single justice of a district court of appeal in such a matter, where he had made the writ returnable before himself, more

effective and of greater dignity than the decision of three
justices of such court sitting as a *court*. It would moreover
seriously impair the efficacy of the remedy of *habeas corpus*,
in so far as the district courts of appeal are concerned: 1. By
preventing one who was improperly remanded to custody by
such a court from immediately inaugurating a new proceed-
ing in the supreme court, and requiring him to remain in cus-
tody at least thirty days before the order for a transfer could
legally be made by the supreme court and the inquiry as to the
legality of his custody be commenced by such court; and 2.
By preventing any judgment of discharge from being effective
as a judgment until the expiration of the time within which
such an order of transfer might legally be made by the
supreme court, viz.: sixty days, and this without any pro-
vision under which the person found by the district court
of appeal to be illegally confined could, pending further pro-
ceedings, be temporarily released from such custody. It goes
without saying that an intention to accomplish any such re-
sult, so absolutely at war with the whole purpose and scheme
of the remedy by *habeas corpus*, which was designed to sum-
marily release a person from an unlawful custody, should be
most clearly and unequivocally expressed, before this court
should declare the law to be so written. In view of what we
have said as to the well settled law relative to *habeas corpus*
proceedings, we feel that it is a reasonable construction of the
provision of the constitution under discussion, that it does not
include such proceedings. The words "any cause pending"
used therein may reasonably be read, in the connection in
which they are used, as not intended to include and as not
including any matter as to which the well settled law excludes
the idea of any right of review, except where there is a lack
of jurisdiction. Such clearly is a *habeas corpus* proceeding.
But, at any rate, the power of the supreme court to order a
transfer is expressly limited to "any cause *pending* before a
district court of appeal." A *habeas corpus* proceeding can-
not fairly be said to be so "pending" at any time after judg-
ment by such court. Such a proceeding is finally and defi-
nitely ended by the judgment, and if the petitioner be ordered
discharged thereby, he is at once restored to liberty. The con-
stitutional provision should be considered in the light of this
well recognized law, and so considered it appears to us to be

a reasonable construction thereof to hold that it does not include *habeas corpus* proceedings.

Besides uniformly denying such applications for transfer of such matters as have heretofore been made, we have also uniformly, without dissent, immediately entertained original applications for writs on behalf of persons remanded to custody by district courts of appeal, made at any time after such remand and within sixty days thereof, which we would have no right to do if the power of transfer existed. It has also been the uniform practice of our district courts of appeal in *habeas corpus* proceedings, where the justices of any such court were unable to agree upon the merits of the application, to remand the petitioner to custody, upon the ground that they are unable to agree upon his discharge, those courts, under the constitution, having no power to decide any matter except by unanimous vote. This is a practice fully authorized by the views expressed in such cases as *Santa Rosa etc. Co.* v. *Central St. Ry. Co.*, 112 Cal. 436, [44 Pac. 733] ; *Frankel* v. *Deidesheimer*, 93 Cal. 73, [28 Pac. 794], and *Luco* v. *De Toro*, 88 Cal. 26, [11 L. R. A. 543, 25 Pac. 983], which practically authorize an affirmance of proceedings below, where the concurrence of the necessary number of justices in any other action cannot be obtained. Such a remand, of course, terminates the proceeding in that court. It may further be said that the legislature has practically construed the constitutional provision as not including *habeas corpus* proceedings, by recognizing in section 1475 of the Penal Code, the right to an original application to the supreme court in the event of a denial of relief by a district court of appeal.

No very dire results are to be apprehended from this construction of the constitutional provision. Certainly the situation is no worse by reason thereof than it has been during all of the period preceding the establishment of our district courts of appeal. If it develops that there is any substantial conflict between decisions of different district courts of appeal on any question presented on an application in *habeas corpus,* consideration of the question can be had by this court on an original application for a writ of *habeas corpus* to this court by the person remanded to custody. The general questions involved in this particular case are already before this court for

consideration in a proceeding of another character transferred from the district court of appeal of the second district.

For the reasons stated we have always heretofore ruled that we have no such power to transfer in *habeas corpus* proceedings, and we adhere to such conclusion.

Henshaw, J., Sloss, J., Melvin, J., and Lorigan, J., concurred.

SHAW, J., dissenting.—A majority of this court has heretofore in several instances tacitly held that the supreme court has no power to transfer a case in *habeas corpus* from a district court of appeal to the supreme court for a rehearing. I have never agreed to such construction of the constitution. In my opinion it is directly contrary to the constitutional provisions on the subject. The language conferring the power is so clear and plain that no interpretation is necessary. The district courts were created by a constitutional amendment adopted in 1904 amending several sections of article VI. Section 4 contains this clause:

"The supreme court shall have power to order any cause pending before the supreme court to be heard and determined by a district court of appeal, and to order any cause pending before a district court of appeal to be heard and determined by the supreme court. The order last mentioned may be made before judgment has been pronounced by a district court of appeal, or within thirty days after such judgment shall have become final therein. The judgments of the district courts of appeal shall become final therein upon the expiration of thirty days after the same shall have been pronounced.

"The supreme court shall have power to order causes pending before a district court of appeal for one district to be transferred to the district court of appeal of another district for hearing and decision."

This provision expressly gives the supreme court power to transfer *any cause*. This includes cases in *habeas corpus* as clearly as it includes any other kind of action. The word "cause" includes proceedings in *habeas corpus*. Bouvier defines the word "cause," when used to refer to judicial proceedings, as "A suit or action. Any question, civil or criminal, contested before a court of justice." (Vol. 1, p. 295.

See, also, Webster's Dictionary and Standard Dictionary.) There are many decisions of like effect. (*Taylor* v. *United States,* 45 Fed. 531; *Erwin* v. *United States,* 37 Fed. 470, [2 L. R. A. 229]; *In re Farnum,* 51 N. H. 383; *Nacoochee H. M. Co.* v. *Davis,* 40 Ga. 320; *Bridgton* v. *Bennett,* 23 Me. 425.) The two cases first cited hold that a proceeding to punish a witness for contempt of court is a "cause." In the Bridgton case the court said: "A term more comprehensive could not have been readily selected."

The context of section 4 shows that proceedings in *habeas corpus* were intended to be included in the term "cause" in the paragraphs above quoted. The first paragraph of the section defines the appellate and original jurisdiction of the supreme court. With respect to the latter, it declares that it shall have "power to issue writs of *mandamus, certiorari,* prohibition and *habeas corpus.*" Following are provisions defining the boundaries of the several districts of the state. Then comes a paragraph defining the original and appellate jurisdiction of the district courts of appeal. Their original jurisdiction is declared to include "power to issue writs of *mandamus, certiorari,* prohibition and *habeas corpus.*" Then follows the clause first above quoted giving the supreme court power to transfer "any cause" to or from either court. In cases of *mandamus, certiorari,* and prohibition, begun in the district court, the supreme court has always recognized and has frequently exercised this power of transfer. By the above quoted clauses the proceeding in *habeas corpus* is placed in the same category with the classes of cases just mentioned. It seems indisputable that the court must have the same power to transfer in *habeas corpus* as in the other cases. If a case in one of the classes first named is a "cause," a proceeding in *habeas corpus* must also be a "cause" within the meaning of the section.

Furthermore, section 24 of the same article, being a part of the same amendment, provides that if the justices of a district court "are unable to concur in a judgment, they shall give their several opinions in writing and cause copies thereof to be forwarded to the supreme court." It does not provide for a transfer to the supreme court in such cases. The paragraph of section 4, first quoted, has always been considered to authorize such transfer and transfers are made accordingly.

It was evidently intended to include cases where there was a disagreement in the district court, as well as other cases, in order to avoid the predicament of absolute inability of the district court to dispose of the cause, or the imperative necessity, under the reasons given in *Luco* v. *De Toro,* 88 Cal. 26, [11 L. R. A. 543, 25 Pac. 983], for some of the justices to concur in a judgment which they believe to be erroneous, merely to end the litigation. There is absolutely no good reason for forcing the justices of that court to do this in *habeas corpus* cases alone when it can be avoided by allowing section 4 to have the effect which its words express.

The fact that the supreme court has heretofore entertained original applications in *habeas corpus* by persons who have been remanded on a similar application to the district court, and the fact that the legislature has recognized its power to do so, is without argumentative force. The power is given by the constitution. The legislature can neither take it away nor confer it, nor does legislative sanction strengthen it. A judgment in *habeas corpus* refusing to discharge a person in custody on a criminal charge is no bar to a subsequent writ in any court for the same cause. It is a bar only where there is a discharge, or where two persons are contending for the right to the custody of a third person. (1 Freeman on Judgments, sec. 324; *Ex parte Perkins,* 2 Cal. 424; *Ex parte Ring,* 28 Cal. 251.) This principle gives this court full power to entertain such applications after a judgment of remand in the district court and the exercise of this power heretofore has been wholly attributable to this reason and not to the theory that no power existed to order a transfer. No application for a transfer to this court from a district court has ever been made in a case where the right to custody of a third person was in issue and the district court had given judgment upon it. Being a former adjudication, there would be no right or power of review in any court, unless this court has power, under section 4, aforesaid, to vacate the decision of the district court of appeal and transfer the cause to the supreme court for a rehearing. If the power exists in that case, it must exist in all cases.

The argument that the provision should not be given effect to allow transfers from district courts, because hitherto no appeal has ever been provided in this state from a decision in

*habeas corpus* by a superior court or judge thereof, or by a justice of the supreme or district court, I cannot understand. If the words are unambiguous, as I think must be admitted, and the power of transfer is given thereby, the giving or withholding of the right of appeal from decisions of other tribunals by other statutes or parts of ·the constitution has no bearing upon the meaning of this particular part of the constitution. Such analogies are significant only when there is an ambiguity to clear up. That there should be a right of appeal by the state from the judgment of the superior court discharging a prisoner is shown by the result of the Hughes case (159 Cal. 360, [113 Pac. 684]), where a prisoner in Folsom state prison, regularly convicted and sentenced by the superior court of one county, was released without legal cause by the superior court of another county, and the state was declared to be remediless. Moreover, the legislature could at any time destroy this argument by providing for an appeal in such cases. The argument amounts to only this, that since a defect in one part of our judicial system has been suffered to continue so long, although it has caused some miscarriages of justice, it must be assumed that a constitutional provision designed to avoid a similar defect in the district court system does not mean what it plainly says, because to give it such effect would make the system different in that respect from any that has heretofore been established. It seems to me that the obvious defect existing as to superior courts furnishes a good reason for avoiding it in the newly created jurisdiction and for giving the provision that effect, even if it were not clear, but might reasonably be so construed.

The decision defeats to a very large and important extent one of the main objects for which this power of transfer was given. In *People* v. *Davis,* 147 Cal. 348, [81 Pac. 718], this court declared that the power to transfer was given to make the supreme court the court of final decision upon all important questions of law and to enable it to supervise the decisions of the several district courts of appeal, in order to secure a uniform rule of decision throughout the state. The proceeding in *habeas corpus* is resorted to, more than any other form of action, to obtain decisions upon the construction, constitutionality, and effect of penal laws. The result of this decision is that we may have in this state three independent judicial

systems, each construing and giving effect to statutes, charters, and the constitution, in their own way and differently from the others, without there being any means of revising or harmonizing their decisions, except upon the chance that some other person may bring a case in the supreme court involving the same question. The experience of eight years which have elapsed since the district courts were created demonstrates that this chance never happens when a decision of the district court is against the state.

For these reasons I am of the opinion that the power to transfer exists in cases of proceedings in *habeas corpus* as fully as in any other kind of action or proceeding, and that to hold otherwise is contrary not only to the letter but also to the purposes of the constitutional provision.