[Crim. No. 13682. In Bank. Apr. 26, 1971.]

In re GUY THOMAS CROW on Habeas Corpus.

SUMMARY

An accused who escaped from a state hospital to which he had been committed on the suspension of a Pen. Code, § 288, charge was captured and sentenced on an escape charge. During his confinement, his request for a prompt sentencing on the § 288 charge was ignored, and after serving two and one-half years on the escape charge, he was, pursuant to a "hold," returned for conclusion of the trial on the § 288 charge and was sentenced to prison. The superior court of the county in which he was confined concluded, on his application for a writ of habeas corpus, that under Pen. Code, § 1202, he was entitled to a new trial on the § 288 charge, and ordered him into custody of the court in which that charge had been initiated, but that court "dismissed" the other court's order and remanded him to prison in accordance with its prior sentence.

The Supreme Court granted a writ of habeas corpus, holding that the trial court's order granting habeas corpus had become final and had invalidated the judgment on the § 288 charge, and that, therefore, the other court's subsequent order purporting to reinstate its judgment and recommit him pursuant thereto could not stand, since there was no underlying conviction on which such judgment could be based. (Opinion by Tobriner, J., expressing the unanimous view of the court.)

615

**COUNSEL**

Guy Thomas Crow, in pro. per., and Douglas C. Busath, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Respondent.

## OPINION

**TOBRINER, J.**—This case involves the application of the doctrine of res judicata to a final judgment of the superior court granting relief in habeas corpus. We shall explain why we have concluded that the judgment of the Superior Court of Sacramento County granting petitioner habeas corpus relief became a final judgment on the merits when the People failed to appeal under Penal Code section 1506. The merits of petitioner's claim and the jurisdiction of the Sacramento court to grant relief in habeas corpus were fully and fairly litigated before that tribunal. We see no reason why the People should be permitted in this collateral proceeding to relitigate the merits of the case. We hold that the writ should issue and the petitioner should be remanded for proceedings consistent with the judgment of the Sacramento Superior Court.

### 1. *The facts*

On April 30, 1958, petitioner, Guy Thomas Crow, was found guilty in Los Angeles Superior Court of violating Penal Code section 288. The trial court suspended judgment and sentence and appointed a doctor to examine petitioner to determine whether he should receive treatment at Atascadero State Hospital. As a consequence of that examination the court on May 21, 1958, further suspended the criminal proceedings and committed petitioner to the hospital for a period not to exceed 90 days. Then, on July 31, 1958, the court committed petitioner to the Department of Mental Hygiene, Atascadero State Hospital, for an indeterminate period. (Welf. & Inst. Code, § 6316, formerly Welf. & Inst. Code, § 5512.) He subsequently escaped.

Petitioner was apprehended and returned for trial on the escape charge.[1] On January 12, 1959, in the San Luis Obispo Superior Court, petitioner pleaded guilty to the escape—a violation of Health and Safety Code section 5522 (presently Welf. & Inst. Code, § 6330)—and the court sentenced him to the state penitentiary. While serving his term in prison, petitioner filed a formal request with the Los Angeles Superior Court for prompt resumption of the section 288 proceedings. Both the Los Angeles Superior Court and the Los Angeles District Attorney's office refused to proceed immediately with the sentencing.[2] Petitioner served two and one-half years on the escape

---

[1]After such an escape the superintendent of the state hospital may certify that the escapee has not recovered and still constitutes a danger to the healh and safety of others. (Welf. & Inst. Code, § 6325, formerly Welf. & Inst. Code, § 5517.) Upon such certification the escapee must be returned to the court in which he was initially tried for further proceedings on the original criminal charge. (Welf. & Inst. Code, § 6326, formerly Welf. & Inst. Code, § 5518.)

[2]As a result of petitioner's request, the Superintendent of Atascadero on May 26, 1960, certified that petitioner had not recovered and should be returned for sentenc-

conviction and was due to be released on parole. The Los Angeles District Attorney's office, however, exercised a "hold" on petitioner and returned him for the conclusion of the trial on the original section 288 charge. On August 28, 1961, the Los Angeles Superior Court sentenced petitioner to state prison for the term prescribed by law.

On February 19, 1962, while confined at Folsom State Prison, petitioner filed a petition for writ of habeas corpus with the Sacramento County Superior Court, alleging that he had been deprived of his right to a speedy trial on the basis of the facts stated above. (Pen. Code, §§ 1473-1474.) The Sacramento court granted the writ and ordered it returnable before that court on April 10, 1962. (See Pen. Code, §§ 1476, 1481.)

On that date, petitioner, represented by an assistant public defender, appeared before Judge Raymond T. Coughlin of the Sacramento County Superior Court. A deputy district attorney represented the People. A transcript of the hearing indicates that the parties stipulated to the truth of the facts stated in the petition. Petitioner's counsel argued that since the court had disregarded his demand for prompt sentencing, the court should discharge him from custody under Penal Code section 1381.[3] The People argued that Penal Code section 1381 should not apply to this delayed sentencing case but, instead, that the sentencing provisions of Penal Code sections 1191 and 1202 were appropriate.[4] Lastly, the deputy district

---

ing on the Penal Code section 288 charge. Subsequently, on June 10, 1960, instead of granting petitioner's request for prompt sentencing as stated in the text, the Los Angeles Superior Court, while petitioner was serving his term for escape, placed a "hold" against him. Only on July 10, 1961, when petitioner was about to be paroled from his escape term, did the authorities bring him back to Los Angeles. Hence, over two and one-half years elapsed between the escape sentence and the resumption of section 288 proceedings. During this period petitioner requested sentencing. At least one year and one month passed during which the Los Angeles Superior Court knew of the situation, but did not request petitioner's return for sentencing.

[3]At the time of petitioner's request for sentencing under Penal Code section 1381, that section provided in pertinent part: "Whenever a defendant has been convicted, in any court of this State, of the commission of a felony or indictable misdemeanor and has been sentenced to and has entered upon a term of imprisonment in a state prison or has been committed to and placed in an institution subject to the jurisdiction of the Department of the Youth Authority and at the time of the entry upon such term of imprisonment or commitment there is pending in any court of this State, any other indictment, information, or *complaint* charging the defendant with the commission of any crime it is hereby made mandatory upon the district attorney of the county in which such charge is pending to bring the same to trial within 90 days after such defendant shall have delivered to said district attorney written notice of the place of his imprisonment or commitment and his desire to be brought to trial. . . . In the event such action is not brought to trial within the 90 days as herein provided the court in which such charge is pending must . . . dismiss such charge." (Stats. 1955, ch. 364, § 1, pp. 820-821.)

[4]"If no sufficient cause is alleged or appears to the court at the time fixed for pronouncing judgment, as provided in Section 1191 of this code, why judgment should not

attorney contended that petitioner had not been prejudiced by the two-and-one-half-year delay in sentencing and that this procedural error should not be cognizable on habeas corpus. Arguing that the right to a speedy trial was fundamental, petitioner submitted that the lengthy delay had prejudiced him by the loss of the time in which his sentences could have been served concurrently. The court took the case under submission.

On June 29, 1962, the superior court found that all of the allegations of the petition for writ of habeas corpus were true and that petitioner was entitled to a new trial pursuant to Penal Code section 1202. The Sacramento court ordered petitioner into the custody of the Los Angeles Superior Court and directed the District Attorney of Los Angeles County to commence a new trial against petitioner for a violation of section 288 as originally charged.[5] The People did not appeal under Penal Code section 1506 and the Sacramento Superior Court judgment became final.

On September 27, 1962, petitioner appeared in the Los Angeles County Superior Court. The Los Angeles court heard arguments on the matter, "dismissed" the Sacramento court's order, and remanded petitioner to state prison in accordance with its sentence of August 28, 1961.[6]

---

be pronounced, it must thereupon be rendered; and *if not rendered or pronounced within the time so fixed* or to which it is continued under provisions of Section 1191 of this code, *then the defendant shall be entitled to a new trial. . . .*" (Pen. Code, § 1202.) (Italics added.)

[5]"This cause coming on regularly for hearing on April 10, 1962, the petitioner, GUY THOMAS CROW, appearing in person, and by his attorney, PATRICK R. MURPHY, Assistant Public Defender, Sacramento County, and the respondent, ROBERT A. HEINZE, appearing by his counsel, PETER MERING, Deputy District Attorney of Sacramento County, and it being stipulated by the respective counsel that the facts alleged in petitioner's applicaton for the Writ of Habeas Corpus are true, and it being further stipulated by respective counsel that the Court take said matter under submission, and the Court being fully advised, now finds all of the allegations in the application are true and the petitioner is entitled to a new trial for the Violation of Section No. 288 of the Penal Code of the State of California, in and for the County of Los Angeles, in Action No. 199533 as prayed for in his said application under the provisions of Section 1202 of the Penal Code;

"Now, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that ROBERT A. HEINZE, Warden of the California State Prison at Folsom, California, deliver the petitioner, GUY THOMAS CROW, into the custody of the Superior Court of the State of California, in and for the County of Los Angeles *and the District Attorney of Los· Angeles County is directed to commence a new trial against Petitioner Guy Thomas Crow,* for a Violation of Section 288 of the Penal Code of the State of California, as originally charged in Superior Court Action No. 199533.

"Dated this 29th day of June, 1962.

"Raymond T. Coughlin, Judge of the Superior Court, Department No. 1" (Italics added.)

[6]The Los Angeles Superior Court did not explain its action. The record of the present proceeding, however, contains an uncontroverted explanation in a letter

## 2. *The Sacramento Superior Court determined that petitioner was entitled to a new trial under Penal Code section 1202.*

Having issued a writ of habeas corpus to bring the petitioner before the court for the consideration of his allegations, the Sacramento County Superior Court heard the evidence and arguments of counsel. The deputy district attorney contended that habeas corpus should not reach petitioner's claim, arguing against petitioner's absolute release from custody. The deputy district attorney actually suggested, however, that if the court determined that habeas corpus lay, the court should grant petitioner a new trial under Penal Code section 1202. After a full hearing, the superior court concluded that habeas corpus would lie, accepted the deputy district attorney's suggestion, and determined that petitioner was entitled to a new trial under Penal Code section 1202.

The granted relief fell clearly within the court's jurisdiction. Having issued a writ of habeas corpus (Pen. Code, § 1476), the court's power could not be limited to either discharging the petitioner from, or remanding him to, custody (Pen. Code, §§ 1485, 1486), but extended to disposing of him "as the justice of the case may require" (Pen. Code, § 1484; see *In re Hochberg* (1970) 2 Cal.3d 870, 875 fn. 4 [87. Cal.Rptr. 681, 471 P.2d 1]). It included the power to transfer defendant from the custody of the warden to the custody of the Superior Court of Los Angeles County. (Pen. Code, § 1493.)[7] The court's order rested on its determination that

from the attorney appointed as counsel for petitioner in Los Angeles to the assistant public defender who represented petitioner in the Sacramento Superior Court proceedings. "This is to inform you of the matter of the above-named defendant, Guy Thomas Crow. . . . [T]he Superior Court of Los Angeles County dismissed proceedings on the ground that a Superior Court of another county could not order the Superior Court of a sister county to perform any act, and particularly pursuant to the order of Judge Coughlin. . . . According to the order of Judge Coughlin, it was stipulated by the District Attorney's office and your office that the facts alleged in petitioner's application for a writ of habeas corpus were true, and the Court also found that the allegations in the application were true. If this be so, then the petition for writ of habeas corpus should be granted, and the defendant released from custody forthwith. It would not be necessary for Judge Coughlin to order a new trial since the petition for writ of habeas corpus does not request a new trial but merely that the defendant Crow is illegally in restraint and custody. This letter is for the purpose of clarifying the proceedings here in Los Angeles County, in which proceedings I was appointed by the Court to represent Mr. Crow."

[7]The Attorney General contends that Penal Code section 1485 requires that whenever habeas corpus relief is granted the petitioner must be absolutely discharged from custody. Penal Code section 1485 provides that if a person is illegally imprisoned or restrained, the court "must discharge such party from the custody or restraint under which he is held." Section 1485 simply "means that the prisoner may be discharged from illegal conditions of restraint although not from all restraint." (*In re Chessman, infra,* 44 Cal.2d 1, 6.) Inherent in the power to issue the writ

the Superior Court of Los Angeles County exceeded its jurisdiction (Pen. Code, § 1487, subd. 1) by delaying for two and one-half years to impose judgment, thereby depriving petitioner of the possibility of serving concurrent sentences; and that this delay violated the mandate of Penal Code section 1202. ■ In determining that petitioner was entitled to a new trial under section 1202, the Superior Court of Sacramento County necessarily invalidated the judgment against him and set the case at large as though it had never been tried. (Pen. Code, § 1180; see *In re James* (1952) 38 Cal.2d 302, 313-314 [240 P.2d 596].)

Instead of effectuating the order of the Superior Court of Sacramento County, the Superior Court of Los Angeles County purported to dismiss that order, apparently on the theory that one superior court cannot tell another superior court what to do. The Superior Court of Sacramento County, however, did not direct the Superior Court of Los Angeles County to do anything. Rather, the court ordered the warden at Folsom to deliver petitioner into the custody of the Superior Court of the County of Los Angeles; and "the District Attorney of Los Angeles is directed to commence a new trial against petitioner Thomas Crow, for a violation of section 288 of the Penal Code of the State of California as originally charged in Superior Court Action No. 199533." The court merely recognized that upon the order of the court setting aside the judgment and determining the petitioner was entitled to a new trial, the District Attorney of Los Angeles was then obliged to proceed with such a new trial, or move to dismiss in the interests of justice. (See Note, *Individualized Criminal Justice in the Supreme Court: A Study of Dispositional Decision Making* (1968) 81 Harv.L.Rev. 1260, 1278 fn. 90.)

Even if we assume that the Sacramento Superior Court's order, directed to the district attorney, exceeded its jurisdiction, such excess would in no way invalidate its order setting the case at large for a new trial. ■ Under these circumstances, the order of the Superior Court of Los Angeles purporting to reinstate its judgment and re-commit petitioner pursuant thereto cannot stand. There no longer remained any underlying conviction on which such judgment could be based. (Pen. Code, § 1180.)

---

of habeas corpus is the power to fashion a remedy for the deprivation of any fundamental right which is cognizable in habeas corpus. (See, e.g., Pen. Code, § 1484; *In re Smith* (1970) 3 Cal.3d 192, 203-204 [90 Cal.Rptr. 1, 474 P.2d 969]; *In re Harrell* (1970) 2 Cal.3d 675, 704, 706 [87 Cal.Rptr. 504, 470 P.2d 640]; *In re Ricky H.* (1970) 2 Cal.3d 513, 525 [86 Cal.Rptr. 76, 468 P.2d 204]; *In re Kemp* (1969) 1 Cal.3d 190, 196 [81 Cal.Rptr. 609, 460 P.2d 481]; *In re Williams* (1969) 1 Cal.3d 168, 170, 179 [81 Cal.Rptr. 784, 460 P.2d 984].)

*3. Since the People failed to appeal, the Sacramento Superior Court judgment became res judicata.*

The People had the right to appeal the decision of the Sacramento County Superior Court granting petitioner habeas corpus relief.[8] Penal Code section 1506 provides: "An appeal may be taken . . . by the people from a final order of a superior court made upon the return of a writ of habeas corpus discharging a defendant or otherwise granting all or any part of the relief sought. . . ." (See *In re Ketchel* (1968) 68 Cal.2d 397, 399 [66 Cal.Rptr. 881, 438 P.2d 625]; *In re Chessman* (1955) 44 Cal.2d 1, 4-6 [279 P.2d 24]; *In re Murdock* (1936) 5 Cal.2d 644, 646 [55 P.2d 843]; (prior to enactment of section 1506 in 1927 the superior court's decision was unreviewable and final); *France* v. *Superior Court* (1927) 201 Cal. 122, 127 [255 P. 815, 52 A.L.R. 869]; *In re Zany* (1913) 164 Cal. 724, 727 [130 P. 710]; *In re Hughes* (1911) 159 Cal. 360, 363 [113 P. 684]; *In re Perkins* (1852) 2 Cal. 424, 430.)

If the Attorney General had appealed the judgment he could have contended, for example, that petitioner was not deprived of his right to a speedy trial because he was not prejudiced by the delay or because he waived his right to such speedy trial by failing to urge it in a timely manner. He might also have argued that habeas corpus will not lie to raise a speedy trial claim or that the Sacramento court should not have considered petitioner's allegations, but instead should have transferred the habeas corpus proceeding to Los Angeles. The Sacramento court determined that petitioner had not waived a speedy trial, and had, indeed, been prejudiced by deprivation of the possibility that his sentences could run concurrently. (See *Smith* v. *Hooey* (1969) 393 U.S. 374, 378 [21 L.Ed.2d 607, 611, 89 S.Ct. 575].) The superior court also decided that these allegations were cognizable on habeas

---

[8] Of course, the prisoner cannot assert any right to appeal the denial of his petition for writ of habeas corpus. (See *Gardner* v. *California* (1969) 393 U.S. 367 [21 L.Ed.2d 601, 89 S.Ct. 580]; *In re Hochberg, supra*, 2 Cal.2d 870, 876; *Loustalot* v. *Superior Court* (1947) 30 Cal.2d 905, 913 [186 P.2d 673].) Since the petitioner cannot appeal, his remedy lies in the petition for habeas corpus to a higher court. Hence, the doctrine of res judicata would not bar the petitioner from seeking relief in habeas corpus after successive denials of his petitions. (*Sanders* v. *United States* (1963) 373 U.S. 1, 11-12, 15 [10 L.Ed.2d 148, 158-159, 161, 83 S.Ct. 1068]; *In re Swain* (1949) 34 Cal.2d 300, 303-304 [209 P.2d 793]; *In re Miller* (1941) 17 Cal.2d 734, 735 [112 P.2d 10].) Similarly, the doctrine of res judicata cannot block a prisoner from seeking post-conviction habeas corpus relief from his criminal conviction. The broad scope of the Great Writ (see *In re Jackson* (1964) 61 Cal.2d 500, 503-504 [39 Cal.Rptr. 220, 393 P.2d 420]) and the fundamental right that it protects, prevent the application of the doctrine of res judicata to foreclose habeas corpus relief. (*Fay* v. *Noia* (1963) 372 U.S. 391, 422-426 [9 L.Ed.2d 837, 858-861, 83 S.Ct. 822]; *Waley* v. *Johnston* (1942) 316 U.S. 101, 105 [86 L.Ed. 1302, 1304, 62 S.Ct. 964].)

corpus and granted relief under Penal Code section 1202.[9] If the Attorney General had appealed, the appellate court could have considered whether substantial evidence supported the trial court's judgment, whether the trial court had committed any error of law reviewable on appeal, and whether any error in accepting the district attorney's suggestion as to Penal Code section 1202 was "invited."

The Attorney General, however, did not appeal the superior court's decision, and that judgment became final. We shall point out that the superior court's ruling is therefore binding upon the People; the doctrine of res judicata applies to the superior court's final judgment granting relief in habeas corpus. We initially examine the res judicata doctrine as it has developed in the more familiar context of civil and criminal cases.

In civil cases res judicata precludes parties or persons in privity with the parties from relitigating a cause of action that has been finally determined by a court of competent jurisdiction. In its aspect of collateral estoppel res judicata also postulates that any issue necessarily decided in civil litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action. (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 810 [122 P.2d 892]; see *Martin* v. *Martin* (1970) 2 Cal.3d 752, 758 [87 Cal.Rptr. 526, 470 P.2d 662].)

The doctrine of res judicata in civil matters rests upon the sound

---

[9]We have held that habeas corpus is available to raise a claim to speedy trial (*People* v. *Wilson* (1963) 60 Cal.2d 139, 150 [32 Cal.Rptr. 44, 383 P.2d 452]; we have granted relief by issuing such a writ (*In re Smiley* (1967) 66 Cal.2d 606, 628-632 [58 Cal.Rptr. 579, 427 P.2d 179]); and several Courts of Appeal have granted relief in habeas corpus for violations of a defendant's rights under Penal Code sections 1191 and 1202. (See, e.g., *In re Bouchard* (1918) 38 Cal.App. 441, 443 [176 P. 692].) The Attorney General cites *In re Todd* (1919) 44 Cal.App. 496, 504-505 [186 P. 790], for the proposition that habeas corpus cannot be used to raise a denial of defendant's right to a speedy trial under Penal Code sections 1191 and 1202, if defendant had intentionally bypassed his appellate remedy. (See Pen. Code, § 1237; cf. *Fay* v. *Noia, supra,* 372 U.S. 391, 439-440 [9 L.Ed.2d 837, 869-870].) In *In re Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513], we stated the general rule that "habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie. . . ." But we clearly stated in *Dixon* and in other cases that "although a remedy by appeal or other direct attack might have been available, the writ of habeas corpus nevertheless will lie where special circumstances are presented. . . . [T]he 'requirement of exhaustion of the appellate or other remedy . . . is merely a discretionary policy governing the exercise of the reviewing court's jurisdiction to issue the writ.' " (*In re Black* (1967) 66 Cal.2d 881, 887 [59 Cal.Rptr. 429, 428 P.2d 293]; see *In re Antazo* (1970) 3 Cal.3d 100, 107 [89 Cal.Rptr. 255, 473 P.2d 999].) The Sacramento County Superior Court considered the evidence of petitioner's requests for sentencing, the two-and-one-half-year delay, the prejudice he suffered in being deprived of concurrent sentencing during that period, and exercised its discretion on the facts of this case to issue the writ. That decision became final in the absence of an appeal by the People to claim abuse of discretion.

policy of limiting litigation by preventing a party who has had one fair adversary hearing on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination. (See *Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 470-473 [82 Cal.Rptr. 489, 462 P.2d 17]; *Jorgensen* v. *Jorgensen* (1948) 32 Cal.2d 13, 18-19 [193 P.2d 728].) ■ In criminal cases in which an individual has once been haled before a jury and found innocent, res judicata, including collateral estoppel, rests upon the double jeopardy clause of the Fifth Amendment and prevents a second prosecution for the same conduct or subject matter. (*Ashe* v. *Swenson* (1970) 397 U.S. 436, 445 [25 L.Ed.2d 469, 476, 90 S.Ct. 1189]; see *Cardenas* v. *Superior Court* (1961) 56 Cal.2d 273, 275 [14 Cal.Rptr. 657, 363 P.2d 889, 100 A.L.R.2d 371]; *Oliver* v. *Superior Court* (1928) 92 Cal.App. 94, 96 [267 P. 764]; McLaren, *The Doctrine of Res Judicata as applied to the Trial of Criminal Cases* (1935) 10 Wash. L.Rev. 198, 204.)

■ The social policies which underlie the doctrine of res judicata and the high purpose of the writ of habeas corpus also conjoin in barring a governmental attempt to relitigate the grant of relief in habeas corpus. The writ of habeas corpus affords an efficacious means of vindicating an individual's fundamental rights. (See *Peyton* v. *Rowe* (1968) 391 U.S. 54, 58-59 [20 L.Ed.2d 426, 429-430, 88 S.Ct. 1549].) ■ The doctrine of res judicata prevents the relitigation of issues determined by a final judgment in a prior action between the same parties or those in privity with the original parties.[10] (*Norris* v. *San Mateo County Title Co.* (1951) 37 Cal.2d 269, 272 [231 P.2d 493].) ■ A final order or judgment granting relief to a petitioner on habeas corpus is a conclusive determination that he is illegally held in custody; it is res judicata of all issues of law and fact necessarily involved in that result. (*In re Bailleaux* (1956) 47 Cal.2d 258, 261 [302 P.2d 801]; *Thuesen* v. *Superior Court* (1932) 215 Cal. 572, 576 [12 P.2d 8]; *In re Begerow* (1902) 136 Cal. 293, 298 [68 P. 773]; 24 Cal.Jur.2d, Habeas Corpus, § 102, p. 588; cf. *Martin* v. *Martin, supra,* 2 Cal.3d 752, 761 (citing *Bailleaux* with approval).)

■ In this case the People could have appealed the Sacramento order granting habeas corpus relief (Pen. Code, § 1506), but chose not to do so. Hence, after the judgment of the Sacramento County Superior Court became final, the doctrine of res judicata bound the parties to act in accordance with that judgment.

---

[10]There is no question that the People received a fair adversary hearing in the Sacramento County Superior Court. (*Kulchar* v. *Kulchar, supra,* 1 Cal.3d 467, 471.) Nor is there any question that the parties before the Sacramento court are the same or in privity with those presently before this court. (See *Bernhard* v. *Bank of America, supra,* 19 Cal.2d 807, 810.)

Since the People did not appeal the final judgment of the Sacramento court, we obviously cannot now relitigate the merits of that cause. For the guidance of future courts, however, we point out the procedure that we believe the Sacramento court, in light of cases subsequently decided by this court, should have followed.

 Under the California Constitution the superior court in the county where the prisoner is confined has jurisdiction to issue the writ of habeas corpus (Cal.Const., art. VI, § 10, formerly Cal.Const. art. VI, § 5.), and thus the prisoner must initially file his petition for writ of habeas corpus in that court. If that court finds the petitioner has not alleged a prima facie case for habeas corpus relief, it may deny the petition without further proceedings. (See *In re Swain, supra,* 34 Cal.2d 300.) If, on the other hand, the petitioner alleges facts challenging the validity of his prior convictions which, if true, would entitle him to resentencing, the superior court in the county of confinement should then transfer the case to the court which imposed the sentence. (*In re Caffey* (1968) 68 Cal.2d 762, 765 fn. 3 [69 Cal.Rptr. 93, 441 P.2d 933].) If the prior convictions are there found to be invalid, the sentencing court should itself fix the new sentence because it normally retains knowledge of the facts of the case and the factors relevant to sentencing. (See *In re Haro* (1969) 71 Cal.2d 1021, 1024-1026 [80 Cal.Rptr. 588, 458 P.2d 500]; *In re Woods* (1966) 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913].)

We have recently extended the *Caffey* procedure to cases in which the prisoner adequately alleges that his sentence violated *People* v. *Tenorio* (1970) 3 Cal.3d 89, 95-96 fn. 2 [89 Cal.Rptr. 249, 473 P.2d 993]: the petition for writ of habeas corpus must be transferred to the sentencing court for consideration and resolution of petitioner's contention, and, if required, of the sentencing. From *Caffey, Haro,* and *Tenorio* we distill the concept that in cases in which a prisoner challenges the procedures underlying his sentence, his petition for habeas corpus should be transferred to the sentencing court for consideration.[11]

Applying this concept to the present case, we note that the prisoner filed his petition for writ of habeas corpus in the Sacramento Superior Court, where he was incarcerated, alleging that he had ben illegally sentenced by the Los Angeles court. The Sacramento court found that the petition alleged a prima facie case for relief and ordered an evidentiary hearing in Sacramento. If the Sacramento court had had before it our decisions in *Caffey,*

---

[11]We do not determine in what other situations the transfer of habeas corpus petitions would be appropriate. (See *In re Montgomery* (1970) 2 Cal.3d 863, 868 fn. 4 [87 Cal.Rptr. 695, 471 P.2d 15].)

*Haro,* and *Tenorio,* the court in all likelihood would have properly and correctly transferred petitioner's habeas corpus application to Los Angeles.

The writ of habeas corpus is granted and petitioner is remanded to the Superior Court of Los Angeles County for proceedings consistent with this opinion.

Wright, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.