[Crim. No. 16400. In Bank. Mar. 13, 1974.]

In re THURLOW JENNINGS STEWART on Habeas Corpus.

### COUNSEL

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, and Oretta D. Sears, Deputy District Attorney, for Appellant.

Frank L. Williams, Jr., Public Defender, James R. Goff and Joanne Harrold, Deputy Public Defenders, for Respondent.

### OPINION

**WRIGHT, C. J.**—The People appeal from an order granting a petition for a writ of habeas corpus for the limited purpose of vacating and setting aside a sentence insofar as it adjudicated defendant an habitual criminal. The adjudication was based on defendant's admission of the truth of allegations of three prior felony convictions. (Pen. Code, § 644, subd. (b).)[1]

---

[1]Penal Code section 644, subdivision (b), provides in pertinent part: "Every person convicted in this State of the crime of robbery, burglary of the first degree . . . felonious assault with a deadly weapon . . . who shall have been previously three times convicted, upon charges separately brought and tried, and who shall have served separate terms therefor in any state prison . . . of the crime of robbery, burglary . . . shall be adjudged an habitual criminal and shall be punished by imprisonment in the state prison for life."

All statutory references are to sections of the Penal Code unless otherwise specifically stated.

In granting the petition the trial court found that defendant's admissions were not knowingly and intelligently made. We hold that the fact of each of the alleged prior convictions was properly admitted by defendant and reverse the order. We remand the cause for further proceedings as hereinafter directed.

The issues herein come before us only after a tortuous route in the courts below. Defendant was charged with and convicted of armed robbery (§ 211) and two counts of burglary (§ 459) in the Orange County Superior Court. The information also alleged that defendant had suffered three separate prior felony convictions, the same being armed robbery in Colorado in 1955, burglary in California in 1959 and robbery in California in 1961. It was further alleged that as to each of the prior convictions defendant had served a term in a state prison. Defendant first denied but later admitted the truth of the allegations of the prior convictions. The trial court found defendant to be an habitual criminal under section 644, subdivision (b), and he was sentenced to state prison for the terms provided by law with the sentence as to each offense to run concurrently. On appeal the judgment was affirmed. (*People* v. *Stewart* (Dec. 19, 1969) 4 Crim. 3669, unpublished.)[2]

In January 1971, while confined in a state prison facility in Sacramento County, defendant sought a writ of habeas corpus on the ground that he had been improperly sentenced as an habitual criminal in that the 1955 Colorado conviction, on which the adjudication was based in part, was constitutionally invalid. He further complained that he had not been timely advised at the time of the admissions as to the consequences thereof. An order to show cause issued and, after a hearing at which the district attorney in behalf of the People conceded the invalidity of the 1955 Colorado conviction, the court issued an order reciting that defendant had "alleged facts which, if true, would entitle the petitioner to resentencing in the Superior Court of Orange County." The court then ordered "the writ of Habeas Corpus issued, returnable in the Superior Court of Orange County to which court this cause is transferred."

---

[2]Following affirmance, in response to a petition for the writ of habeas corpus first filed in the trial court and then transferred to the appellate court, the Court of Appeal reconsidered the sentences imposed in light of *People* v. *Floyd* (1969) 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862]. On May 5, 1970, the appellate court reversed the judgment and remanded the cause for the limited purpose of resentencing in accordance with *Floyd*. On May 12, 1970, a first amended abstract of judgment was filed. It differs from the initial abstract only as to the effect of a finding that defendant was armed with a deadly weapon at the time of the commission of the robbery. The recitals as to the prior convictions in the first amended abstract are the same as those in the initial abstract.

Upon transfer the Superior Court in Orange County treated the petition for the writ on its merits.[3] Defense counsel urged, in addition to the invalidity of the 1955 Colorado conviction, that the adjudication of habitual criminality was invalid as to all priors in that at the time defendant admitted the truth of the allegations of the prior convictions he was not advised as to the added consequences thereof in the event of his conviction of one or more of the criminal charges.

The court conducted an evidentiary hearing upon the question of whether defendant had been advised of the consequences of his admissions of the truth of the allegations of prior convictions. It found on conflicting evidence that defendant had not been fully advised and stated that it would vacate the adjudication of habitual criminality.

Defense counsel next asked the court to rule on the validity of the 1955 Colorado conviction. The issue was submitted on certified copies of the reporter's transcript and other documents relative to the Colorado proceedings. The court found that defendant had knowingly, intelligently and voluntarily waived the right to counsel, and that the Colorado conviction was constitutionally sound.

Following its determinations, the court entered a second amended abstract of judgment (see fn. 2, *supra*) wherein it is recited, contrary to the prior abstracts' recitals, that defendant was not adjudged an habitual criminal within the meaning of section 644.[4]

---

[3]We deem this to be a proper procedure. (*In re Crow* (1971) 4 Cal.3d 613, 624 [94 Cal.Rptr. 254, 483 P.2d 1206].) A prisoner who collaterally challenges the validity of his sentence may do so in the county wherein he is confined. (See Cal. Const., art. VI, § 10; see also, § 1508.) Upon a showing of a prima facie case entitling him to resentencing, "the court should transfer the case to the court rendering the judgment of conviction *for a hearing on the merits* [citations]." *In re Haro* (1969) 71 Cal.2d 1021, 1025 [80 Cal.Rptr. 588, 458 P.2d 500], italics added; see also *id.* at pp. 1025-1026; *In re Cortez* (1971) 6 Cal.3d 78, 82-83 [98 Cal.Rptr. 307, 490 P.2d 819].) Although the order of the Sacramento court may raise some question as to whether it made a determination on the merits of the validity of the 1955 Colorado conviction, the recital in the order suggests that the court did not purport to do so and we conclude that it did not.

[4]The People purport to appeal "from the Order granting the Petition for Writ of Habeas Corpus by THURLOW JENNINGS STEWART to-wit: vacating the adjudication of the defendant Stewart as an habitual offender, therein entered in this Court on August 4, 1971." As stated, the court entered an amended abstract of judgment wherein it is recited that defendant was not adjudged an habitual criminal. This amended abstract bears the date of and was filed on August 9, 1971. The record presented on appeal discloses no order of the Orange County Superior Court granting a petition for the writ or otherwise making any direction arising out of collateral proceedings. It appears from the reporter's transcript, however, that on August 4,

■ The People's contention that defendant is not entitled to relief on his assertion that he was not fully and timely advised of the consequences of his admissions of the truth of allegations of prior convictions, is well taken. In the case of *In re Yurko, ante,* page 857 [112 Cal.Rptr. 513, 519 P.2d 561], we announced a rule of judicial procedure which requires that an accused be so advised. That rule, however, is applicable only to admissions made on or after the filing of the *Yurko* opinion, and defendant's admissions predate *Yurko* by more than four years. The order granting the petition, accordingly, must be reversed, and the amended abstract of judgment dated August 9, 1971, must be struck from the record.

The propriety of the trial court's ruling as to the validity of the 1955 Colorado conviction is not, technically, before us. The People have not challenged the correctness of the court's ruling that it was constitutionally valid and defendant could not appeal from the presumed order granting the very writ he sought. (*Loustalot* v. *Superior Court* (1947) 30 Cal.2d 905, 913 [186 P.2d 673].) We are not, moreover, able to review the merits of the issue on this appeal as all of the evidentiary matters upon which the trial court relied are not now before us.[5]

---

1971, the court stated that it was setting aside the adjudication of habitual criminality.

Confusion as to the precise nature of the proceedings in the Orange County Superior Court is heightened by the fact that the habeas corpus proceeding transferred to that court was not denominated a collateral proceeding but instead as a further proceeding within the original criminal action which was then final.

In response to an application for collateral relief deemed to be meritorious, the writ should issue directing, in the circumstances of the instant case, the vacation of the adjudication of habitual criminality. The entry of the amended abstract of judgment in the criminal proceedings was apparently intended to be in compliance with such a direction contained in the implied but unissued order although the amended abstract should not have been entered until the finality of the order containing that direction. The People's notice of appeal presumes that such a collateral order had been made and the parties on this appeal have conducted themselves accordingly. To insure that any further confusion might be avoided our order on appeal will deal with both the appeal from the presumed order granting the writ and any orders made in the basic criminal proceedings to the extent necessary to resolve issues fairly presented on appeal.

[5]The invalidity of the 1955 Colorado conviction was claimed on the ground that, although defendant was advised of his right to counsel, he was not advised that if he could not afford counsel one would be appointed for him. (See *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]; *In re Smiley* (1967) 66 Cal.2d 606, 614-615 [58 Cal.Rptr. 579, 427 P.2d 179].) Attached to the petition for the writ is a copy of an excerpt from the transcript in the Colorado proceedings. It appears from that transcript that after the court advised of the right to counsel, and in response to the court's further inquiry as to whether he desired representation, defendant stated that "there doesn't seem to be any need for [the appointment of counsel]." Thereafter defendant twice stated his guilt during

It further appears that there is some substantial question whether the issue of the validity of the Colorado conviction has been resolved against defendant's contentions in a manner which is fair and just. Not only does it appear that the invalidity was conceded by the People in the Sacramento proceedings, but the Orange County Superior Court may be deemed to have expressed divergent views. That court first held that all prior convictions were invalidly determined and then, when the issue was thus moot, stated that the Colorado conviction was constitutionally sound without, however, making any specific order relative thereto.

In view of the foregoing the ends of justice will best be served by affording defendant the opportunity upon remand to the Orange County Superior Court to again raise the issue of the validity of the 1955 Colorado conviction.[6]

The order granting the petition for the writ is reversed and the amended abstract of judgment dated August 9, 1971, is ordered struck from the record. Upon motion by the defendant within 30 days after this opinion becomes final, the question of the validity of the 1955 Colorado conviction charged as a prior is to be redetermined.

McComb, J., Tobriner, J., Burke, J., Sullivan, J., and Roth, J.,[*] concurred.

**MOSK, J.**—I concur.

Lest it be deemed inconsistent to agree with the majority in this case, and to concur and dissent in *In re Yurko* (*ante,* p. 857 [112 Cal.Rptr. 513, 519 P.2d 561]) on the issue of prospectivity, I find it necessary to briefly note the distinction between the circumstances of petitioners Yurko and Stewart.

As I pointed out in my concurring and dissenting opinion in *Westbrook v. Mihaly* (1970) 2 Cal.3d 765, 802-803 [87 Cal.Rptr. 839, 471 P.2d

a discussion of defendant's alternatives. It further appears, however, that the prosecution introduced and the court received additional documents relative to the waiver question, the same being a certified copy of a change of plea and a copy of the judgment. To the latter is attached a copy of a statement made by the defendant at the time the plea was entered. These documents have not been made a part of the record on appeal. At the time of the Colorado conviction defendant was 18 years of age and had not theretofore been charged with a major crime.

[6]Should defendant be able to establish the invalidity of the 1955 Colorado conviction he would nevertheless continue in his status as an habitual criminal, but with only two prior felony convictions he would be subjected to the lesser added penalties of section 644, subdivision (a), rather than subdivision (b).

[*]Assigned by the Chairman of the Judicial Council.

487], there are three alternatives available to a state court which has fashioned a new rule. It may apply the rule: (1) to acts occurring subsequent to the announcement only; (2) to acts occurring subsequent to the announcement and also to the present litigants; or (3) to acts occurring subsequent to the announcement, to the present litigants, and also to acts which occurred prior to the announcement.

In *Westbrook* and *Yurko* my colleagues adopted the first alternative, which is clearly erroneous. In addition to the injustice to the litigant who employs his talent and resources to persuade the court to pronounce a new rule, the prospective-only theory results in rendering a mere advisory opinion, a procedure foreclosed to this court. (See my dissent in *City of Carmel-by-the-Sea* v. *Young* (1970) 2 Cal.3d 259, 275 [85 Cal.Rptr. 1, 466 P.2d 225, 37 A.L.R.3d 1313]; *People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910, 912 [83 Cal.Rptr. 670, 464 P.2d 126]; 2 Witkin, Cal. Procedure (2d ed. 1970) p. 911.) We may act only if there is—or was, in the case of asserted mootness—a justiciable issue involving rights or duties of the parties to the litigation. Where we purport to vindicate the position of the litigant, and then arbitrarily refuse to apply the rule of law to the very litigant involved, a mere advisory opinion emerges; it *decides* nothing. The opinion has the effect of mere dictum. It fails to meet the challenge of Justice Harlan in *Desist* v. *United States* (1969) 394 U.S. 244, 259 [22 L.Ed.2d 248, 261, 89 S.Ct. 1030] (dissenting opn.): "it is the task of this Court, like that of any other, to do justice to each litigant on the merits of his own case."

That was the posture of petitioner *Yurko* (*ante,* p. 857). He was responsible for the new rule and justice should have been done to him on the merits of his own case. But Stewart's case comes before us *after* the majority decision in *Yurko* established the new rule, even if only by dictum, and made the rule prospective. Stare decisis now becomes a factor, even though denial of relief to petitioner Stewart results from the fortuity of chronology.

This situation is not unique. Indeed, the United States Supreme Court addressed itself to the identical problem in *Stovall* v. *Denno* (1967) 388 U.S. 293, 301 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967]. I find Justice Brennan's disposition for the court in that case to be convincing: "We recognize that Wade and Gilbert are, therefore, the only victims of pretrial confrontations in the absence of their counsel to have the benefit of the rules established in their cases. That they must be given that benefit is, however, an unavoidable consequence of the necessity that constitutional adjudications not stand as mere dictum. Sound policies of decision-making,

rooted in the command of Article III of the Constitution that we resolve issues solely in concrete cases or controversies, and in the possible effect upon the incentive to counsel to advance contentions requiring a change in the law, militate against denying Wade and Gilbert the benefit of today's decisions. Inequity arguably results from according the benefit of a new rule to the parties in the case in which it is announced but not to other litigants similarly situated in the trial or appellate process who have raised the same issue. But we regard the fact that the parties involved are chance beneficiaries as an insignificant cost for adherence to sound principles of decision-making." (Fns. omitted.)

Since Stewart's admissions predate the *Yurko* opinion by more than four years, he is properly denied relief.

Petitioner's application for a rehearing was denied April 17, 1974.