[Crim. No. 193. Third Appellate District.—December 18, 1912.]

THE PEOPLE, Appellant v. SAM C. TOMSKY, Respondent.

CRIMINAL LAW—ORDER SETTING ASIDE VERDICT—FAILURE TO PLEAD TO INFORMATION—APPEAL—CONSTRUCTION OF ORDER AS GRANTING NEW TRIAL.—Though an order setting aside a verdict of conviction in a criminal action by the court of its own motion, on the ground that the defendant had never entered a plea to the information is *sui generis,* and though no motion for a new trial was in fact made, yet it is held upon appeal therefrom by the people, that as the order can only be reviewed either as an order granting a new trial or as an order in arrest of judgment, that the order bears a closer

analogy to an order granting a new trial than to an order in arrest of judgment, and it should be construed as granting a new trial.

Id.—Nature of Motion in Arrest of Judgment—Tenable Only When Pleading is Demurrable and Demurred to.—A motion in arrest of judgment is directed against the sufficiency of the indictment or the information to state a public offense, or for any other defects appearing upon the face of such pleading which would subject it, under the law, to the claims of a demurrer, and is entertainable only where the defendant has demurred to the pleading by which he is charged.

Id.—Motion to Set Aside Information not in Arrest of Judgment—Order not Effective to Place Defendant in Statu Quo.—Where the record shows that the defendant made a motion to set aside the information, and that it was denied by the court, but does not show that a demurrer was interposed by the accused, but shows that the order denying it was not based upon defects in the information, it is plainly manifest that the motion and order were not intended to be in arrest of judgment, nor effective to place defendant, under section 1187 of the Penal Code, in the same situation in which he was before the information was filed.

Id.—Evidence Indicative of Intention of Court to Grant New Trial.—The intention of the court to grant a new trial by its order setting aside the information of its own motion, for want of a plea thereto, is further evidenced by the fact that the court ordered that the defendant be admitted to bail pending the trial of the case, and fixed the following Monday as the time for taking his plea to the information as it was originally filed, preliminarily to setting the case down for trial. The failure to secure the plea of a defendant to an information is ground for a new trial, a mistrial having resulted from such failure.

Id.—Crime of Securing Money by False Pretenses—Verdict Supported by Evidence.—The defendant who was accused of the crime of securing money by false pretenses was clearly proved guilty thereof, and the jury were fully justified in finding the defendant guilty of the crime charged in the information, and no other verdict than that of guilty as charged could have justly been returned.

Id.—Constitutional Law—Construction of Constitutional Amendment—Want of Miscarriage of Justice—Applicability to Trial Courts on Motions for New Trial.—The provision of section 4½ of article VI of the constitution adopted in 1911, that: "No judgment shall be set aside or new trial granted in any criminal case on the ground of misdirection of the jury or the improper admission or rejection of evidence, or for any error as to any matter of pleading or procedure, unless, after an examination of the entire cause,

20 Cal. App.—43

including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice," is not confined to the review of cases in appellate courts, but was intended to apply as well to trial courts, in the review of records in criminal cases, on motions for new trial.

ID.—REVIEW OF ACTION OF TRIAL COURT UNDER CONSTITUTION—QUESTION OF LAW.—Where the trial court sets aside a verdict or grants a new trial in contravention of the mandate of the constitution relating to a miscarriage of justice, its action will be nullified upon appeal. Where the action of the trial court is up for review, the question whether the opinion of the trial court that the error complained of has or has not resulted in "a miscarriage of justice" presents a question of law to be determined from a review of the record.

ID.—EFFECT OF AMENDMENT OF CONSTITUTION UPON FORMER DECISIONS. The effect of the amendment of the constitution in 1911, by adding section 4½ to article VI thereof, has been to overcome the effect of former decisions of the supreme court, so far as the question here involved is concerned, and they cannot be considered as authority in the determination of the question whether the error for which the trial court nullified the verdict in this case did or did not result in a "miscarriage of justice."

ID.—ERROR IN ORDER SETTING VERDICT ASIDE NOT PREJUDICIAL—WANT OF MISCARRIAGE OF JUSTICE—EFFECT OF AFFIRMANCE.—The error which impelled the trial judge to make an order setting aside the verdict, could not, under any possible view which may have been taken of it, have resulted in a miscarriage of justice. On the other hand, it is clear, from an examination of the record, that to permit the order appealed from to stand would result in a distinct miscarriage of justice.

APPEAL from an order of the Superior Court of Yolo County setting aside a verdict. K. S. Mahon, Judge presiding.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-general, and J. Charles Jones, for Appellant.

Wm. Tomsky, for Respondent.

HART, J.—The defendant was convicted in the superior court in and for the county of Yolo of the crime of obtaining certain personal property by false and fraudulent pretenses. At the time fixed for pronouncing the sentence or the judg-

ment on the verdict of conviction, the court, of its own motion, made an order setting aside said verdict on the ground that the defendant had never entered a plea to the information under which he was prosecuted and adjudged guilty.

The people, through the district attorney of Yolo County, present this appeal from said order.

This record certainly presents a peculiar situation for several reasons, the most important among which is the difficulty in determining with precision the legal nature of the order made by the court and from which this appeal has been taken. Most appropriately, the proceeding after verdict in this case may be said to be *sui generis.* There was no motion for a new trial by the defendant. In fact, counsel for the defendant, while interposing an objection to any judgment being pronounced on the verdict because of the failure of the defendant to plead to the information, refused to present a motion for a new trial for the asserted reason that "there cannot be a new trial granted where there has not been a valid trial in the first place," by which statement we understand counsel to have meant to say that, the defendant having failed to plead to the information, the proceedings involving the taking of testimony, etc., before an alleged jury and the conclusion of the latter, were an absolute nullity, or exactly the same as though the defendant had never been put upon his trial at all, from which postulate he argues, as obviously no other logical argument could therefrom reasonably be made, that there could be no *new* trial of a question that had never been tried.

But counsel for the defendant went so far as to object to an order by the court setting aside the verdict, his contention being, in analogy to his position as to a motion for a new trial as above indicated, that there was no verdict to set aside, and that there was, therefore, nothing left for the court to do but to refuse to pronounce judgment or sentence. The court, however, as seen, made the order setting aside the verdict, and thereupon both the district attorney and the attorney for the defendant, in open court, gave "notice" that they each would appeal from said order (Pen. Code, secs. 1240 and 1259), notwithstanding which action on the part of the defendant's counsel, he appeared at the oral argument and has presented a brief with this record in resistance to a judgment of reversal. It may be parenthetically suggested that the attorney-general

doubtless properly viewed the attitude of the defendant's counsel at the hearing of this cause before this court as tantamount to an abandonment of the defendant's appeal from the order, otherwise the state's attorney might with propriety have confessed error on the latter appeal and thus have secured a reversal without further ado.

However, the first important point presented here is as to the legal nature of the order from which this appeal is prosecuted. It must be admitted that the point is not one easily solved, if indeed, it can be solved at all to the extent of giving an accurate legal description of the proceedings giving birth to the order appealed from or a proper designation to the order itself.

The attorney for the respondent insists that the order is neither one in arrest of judgment nor one granting a new trial and that, whatever it may be, it is not one from which the law authorizes an appeal, and upon this view of the case as it appears here, he has submitted a motion to dismiss the appeal.

On the other hand, the attorney general sees in the order many of the features or characteristics of an order in arrest of judgment, and, in his argument before this court, both oral and by brief, so treats it.

There are, by virtue of the provisions of section 1238 of the Penal Code, five occasions on which the people may appeal in criminal cases and they are: 1. From an order setting aside the indictment or information; 2. From a judgment for the defendant on a demurrer to the indictment, accusation or information; 3. From an order granting a new trial; 4. From an order in arrest of judgment; 5. From an order, made after judgment, affecting the substantial rights of the people.

It is clear that, if the order here complained of does not come within either the third or the fourth subdivisions of the foregoing section, it is not an appealable order. It certainly cannot be classed with the orders referred to in the other subdivisions of said section, for it is obviously neither an order setting aside the information, nor a judgment for the defendant on a demurrer to such pleading, nor an order made after judgment, etc., no judgment having been pronounced or entered. But, as stated, the attorney-general vigorously contends that the order is more in the nature of one in arrest of judgment than any other from which an appeal by the

people is authorized.    If that view of the order were justified, then unquestionably it would have to be reversed for the reason that the ground upon which it was granted is not included among those upon which an order in arrest of judgment may be made.    And, for the same reason, we cannot see how it can be viewed as an order in arrest of judgment or as intended to have the effect of such an order.

Section 1185 of the Penal Code provides that a motion in arrest of judgment "may be founded on any of the defects in the indictment or information mentioned in section ten hundred and four, unless the objection has been waived by a failure to demur, and must be made and determined before the judgment is pronounced."    Section 1004 enumerates the grounds upon which the defendant may demur to the indictment or information, when the defects constituting such grounds appear upon the face of the pleading.    Section 1187 of said code provides that the "effect of an order arresting the judgment is to place the defendant in the same situation in which he was before the indictment was found or information filed."

Thus it will be seen that a motion in arrest of judgment is directed against the sufficiency of the indictment or the information to state a public offense or for any other defects appearing upon the face of such pleading which would subject it, under the law, to the claims of a demurrer, and is entertainable only where the defendant has demurred to the pleading by which he is charged.    While the record shows that the defendant made a motion to set aside the information and that the same was denied by the court, it does not thus appear that a demurrer was interposed thereto by the accused.    Of course, it is plainly manifest that the effect of the order could not be to place the defendant in the same situation in which he was before the information was filed, as is true where an order in arrest of judgment is made (Pen. Code, sec. 1187), because said order, as shown, was not based upon defects in the information.    Nor, obviously, did the court intend that it should have such effect, since it appears that it made an order admitting him to bail pending the trial of the case and fixed the following Monday as the time for taking his plea to the information as it was originally filed, preliminarily to setting the case down for trial.    From all these considerations, it is

very clear that the proceeding culminating in the making of the order appealed from bears no resemblance whatsoever to a motion in arrest of judgment and that it was not and it could not have been so regarded by the trial court.

It seems to be very plain, however, from the scope of the order as it was marked out by the court, that it bears a closer analogy to an order granting a new trial than to one in arrest of judgment. Although no formal motion for a new trial was presented, the court nevertheless, made an order the necessary effect of which was to award the defendant a new trial, and that such order was intended by the court to so operate, is evidenced by the fact, as already shown, that the court ordered that the defendant be admitted to bail and fixed a time for taking his plea to the information.

That the failure to secure the plea of a defendant to an information or indictment prior to putting him on his trial thereunder is a ground for a new trial, is in effect held to be true in the case of the *People* v. *Corbett,* 28 Cal. 328, and we shall, in the consideration of this appeal, treat the order appealed from as one granting a new trial upon the sole ground that a mistrial was had by reason of the failure to take the defendant's plea to the information.

It appears that, immediately after the jury were impaneled to try the defendant, the clerk of the court, in compliance with the mandate of section 1093, subdivision 1, of the Penal Code, read the information to the jury and thereupon stated, in the presence of the defendant and his counsel, that the accused had theretofore entered a plea of not guilty to said information. Neither the defendant nor his attorney interfered to say that no such plea had at any time been interposed to the information by the prisoner or made any objection whatsoever as to the matter of a plea until after a verdict of guilty had been returned.

With much force, the attorney-general has argued here: 1 That the silence of the accused and his counsel at the time of the announcement by the clerk to the jury, in the presence and hearing of the former, that the prisoner had entered a plea of not guilty to the information, should, upon principle, be construed as an indorsement by them of the clerk's statement in that regard and, therefore, as in effect the interposition of a plea of not guilty by the defendant himself, and,

in this connection, it is argued that, upon every consideration
of fairness and justice, he should under the circumstances be
estopped from denying that a plea was entered; 2. That,
since the trial was conducted upon the evident understand-
ing by the parties on both sides that a plea had been formally
entered, the defendant, therefore, securing all the benefit and
every advantage of a plea regularly entered, the failure to
make the formal plea should be treated as a mere irregularity
which in no manner or degree affected or impinged upon his
substantial rights.

The last stated position of the attorney-general is supported
by many of the courts of last resort of other jurisdictions by
what appears to be very forceful reasoning.   (See *State* v.
*Winstrand,* 37 Iowa, 112; *State* v. *Hayes,* 67 Iowa, 27, [24
N. W. 575] ; *State* v. *Bowman,* 78 Iowa, 520, [43 N. W. 302] ;
*State* v. *Thompson,* 95 Iowa, 465, [64 N. W. 419] ; *State* v.
*Straub,* 16 Wash. 111, [47 Pac. 227] ; *Jones* v. *Territory,* 5
Okla. 536, [49 Pac. 934] ; *Hudson* v. *State,* 117 Ga. 704, [45
S. E. 66] ; *Meece* v. *Commonwealth,* 78 Ky. 586.)

On the other hand, our supreme court, upon reasons equally
cogent, has held that a defendant in a felony case who has
been put upon trial for the offense charged without a formal
plea of not guilty having been entered by him to the indict-
ment or information has not been given a legal trial.   (*People*
v. *Corbett,* 28 Cal. 328; *People* v. *Gaines,* 52 Cal. 479; *People*
v. *Monaghan,* 102 Cal. 229, [36 Pac. 511].)

In the case last cited, it was argued, as here, by the attor-
ney-general, and as is held by the foreign cases above cited to
be the correct view of such a situation, that "by putting in
evidence and arguing the case to the jury, the defendant has
had the benefit of a plea of not guilty, has waived its formal
entry, has shown his intention to rest upon such an issue,
and, having had the benefit of it, is not prejudiced by the fact
that it was not formally entered."   Disapproving that ar-
gument, Judge Temple, in that case, said: "This position is
inconsistent with the admission that a plea is necessary; for
the argument would be just as persuasive had the defendant
never been arraigned at all.   It has been decided over and over
again in numerous cases, all holding against the respondent,"
citing *People.* v. *Corbett,* 28 Cal. 328; *People* v. *Gaines,* 52

Cal. 479, and Bishop's Criminal Procedure, sec. 733, and cases there cited.

As suggested, the argument on both sides of the question is forceful, but the law of this state upon the subject is as our supreme court has construed and announced it, and, unless there has been pointed out here some reason which, by virtue of any change in our laws, has arisen since those cases were decided, requiring or authorizing the announcment of a different rule, it will be necessary to hold that the position of the people upon the proposition cannot be sustained.

But the attorney-general makes the point and contends that the adoption of section 4½ of article VI of the constitution has wrought a marked and material change in the standpoint from which criminal cases must be considered and reviewed by the courts of this state, and that the opinions in the California cases above referred to, having been filed long before the adoption of said section, cannot be regarded as authority, so far as the point involved here is concerned, if it can justly and truly be said, after an examination of the whole record, that a miscarriage of justice did not follow the defendant's omission to enter a formal plea to the information. And it is further contended by the attorney-general that the constitutional provision thus invoked here applies as well to trial as to reviewing courts.

These points will now be considered. But, before doing so, it may be well first to note the fact that an examination of the record has convinced us that the verdict is sufficiently supported by the evidence. In truth, no fair-minded person can, in our judgment, read the evidence as it is disclosed by the record without reaching the conclusion that the jury were fully justified in finding the defendant guilty of the crime charged aginst him in the information. Indeed, it appears to us to have been conclusively shown that the accused, in a most deliberate and cold-blooded manner, obtained from the prosecuting witnesses, who as partners were engaged in carrying on the farming business in Yolo County, a large number of turkeys, of approximately the aggregate value of five hundred dollars, by falsely representing to them, with the intent, feloniously, to despoil them of said property, that he was the agent of a San Francisco mercantile establishment, dealing in turkeys and other fowl, and authorized as such to

buy turkeys throughout the country for said house, when, as a matter of fact, there was no such house in existence, the defendant himself having received the shipment of turkeys at San Francisco, to which place they were consigned, sold them and retained the proceeds of the sale. In short, if the testimony produced by the people was credible (and the jury seem to have so regarded it), then no other verdict than that of guilty as charged could have justly been returned.

Now, the important question here is whether, as the attorney-general contends, section 4½ of article VI of the constitution may properly be applied to the circumstances of this case.

That section of the constitution was adopted by the people and thus made a part of our organic law in the year 1911, but it has never up to the present time found its way to the supreme court in such manner as to require or receive, at the hands of that court, a construction of its real scope or intent. We are, therefore, without desirable light from that source to guide us in determining the general character of the instances to which the rule thus laid down, necessarily in general terms, may justly and with propriety be applied. The question, however, whether the section may properly be invoked in support of the rights of the people in this case is squarely placed before us, and it must, therefore, be decided, solely, so far as this court is concerned, by the unaided light of our own judgment.

The section referred to reads as follows: "No judgment shall be set aside or new trial granted in any criminal case on the ground of misdirection of the jury or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

Although it appears to have been supposed by many members of the legal profession that the foregoing section was designed to have exclusive application to the review of criminal cases by appellate courts, we are convinced, from a careful reading of its language, that it was the intention that it should as well apply to trial courts in the review of records in criminal cases on motions for new trials. The section, as

will readily be perceived, does not expressly limit its application to reviewing or appellate courts, nor does its language in any view that may reasonably be taken of it justify a construction that it was so intended. Trial courts, obviously, have as ample power to set aside judgments and to grant new trials as have the appellate courts, and it is as much their duty as it is that of the higher courts to do so where they are convinced that there exist legal grounds demanding such a course. But the constitution says to those courts, as it thus enjoins the appellate courts, that they must not exercise that power by setting aside a verdict or granting a new trial "in any criminal case on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." And where a trial court sets aside a verdict or grants a new trial in a criminal case in contravention of that mandate of the constitution its action in that regard will be nullified on appeal as readily as the appellate court would refuse to reverse the judgment or the order denying a new trial in a criminal case for any of the errors referred to or contemplated by the section, where such court was of the opinion that the error complained of has not "resulted in a miscarriage of justice."

The important question, then, to be decided is: May the error for which the court below set aside the verdict in the case at bar, when tested by the circumstances disclosed by the record, be said to be among those which may be excused by authority of the constitutional provision under consideration, or, in other words, among those which cannot be held to have resulted in a miscarriage of justice?

Before proceeding to answer the foregoing question, the following may be stated as indisputable propositions: 1. That, where a defendant in a criminal case is put upon his trial upon an indictment or information without having entered a plea thereto, the error thus occurring is one "as to a matter of procedure."; 2. That the language of the section, "unless . . . the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice," clearly

implies that such "opinion" must be supported by a substantial legal foundation, and that, in a given case, where the action of a trial court in that regard is up for review, whether the "opinion" upon which such action has been based is or is not justified, presents purely a question of law to be determined from a review of the whole record.

The central or all-important purpose of said constitutional provision is, obviously, to legally justify the courts in refusing to interfere with or disturb verdicts of guilty in criminal cases in the trial of which error has been committed and in which the evidence amply supports such verdicts, when such interferences may justly be withheld consistently with a just and proper regard for the substantial rights of persons tried for public offenses. The section is general in its language and terms, and, moreover, upon its face, very sweeping in its scope. It does not pretend to describe specifically the character of the errors coming within the purview of its language, or, by express language, to limit the right of the courts to determine and say that any error, whatever its nature, has not resulted in a miscarriage of justice. But it is, of course, very clear that the power vested in the courts by the section is not to be arbitrarily exercised either in the one direction or the other, but that the propriety or impropriety of the application of the provisions of the section must be determined, perhaps, in all cases, as much on the character of the record of the particular case as upon the character of the error itself.

It is, of course, not our intention, nor, obviously, is it necessary, in this or perhaps in any other particular case, to attempt to sound the depths of the constitutional amendment, or, in other words, to undertake to suggest, even if such a task were capable of accomplishment, all the tests of its application. If, as we are convinced is true, the record before us clearly discovers a proper occasion for its application, then the announcement of that conclusion, together with the reasons impelling us thereto, will comprehend all that the exigencies of this case require of us.

The California cases cited and relied upon by the respondent here, proceed upon the theory, which, under the former system in this state, was clearly sustainable, that where the law prescribes and imperatively commands the observance of cer-

tain formalities in the procedure whereby citizens are put
upon their trial for their lives or liberty, such formalities
cannot be dispensed with, and that, where they have been
disregarded, it becomes immaterial whether it may justly be
said that, *in point of fact,* the accused thereby suffered no
substantial prejudice or that thus he was not deprived of a
substantial right in his trial, for the law will itself conclusively
presume therefrom prejudicial injury to his rights.   It will
always be true, and it is logically so, that there must be an
issue before a trial can be had, and it is equally true that
there can be no issue of fact to try unless there has been a
formal affirmation of the fact in dispute on the one side and
a like denial of such fact on the other, and this rule, in this
state, has heretofore been strictly adhered to in criminal cases,
although in civil actions relaxed under certain circumstances,
or, perhaps it would be better to say, its breach excused by
certain circumstances.   Hence, as the California cases referred
to say, where a criminal action is tried without issue having
been formed in the manner prescribed by law there is in law
no trial.   But we agree with the attorney-general that the
section of the constitution in question has overcome, so far
as the point involved in this case is concerned, the effect of the
decisions in those cases, and that they cannot be considered
as authority in the determination of the question whether the
error for which the trial court nullified the verdict in this case
did or did not result in a miscarriage of justice.

In the foreign cases cited by the attorney-general and ad-
verted to above, the conclusions were reached upon a con-
sideration of the proposition that, *in point of fact,* the accused
were not and could not have been damaged in any manner or
sense by the failure to enter a plea to the indictment, and
it is our opinion, as the attorney-general contends, that the
section of our constitution in question makes the reasoning in
those cases peculiarly applicable to the case here.

That it is strictly true that the defendant in this case, *in
point of fact,* by his omission to enter a formal plea to the
information, could not have been and, indeed, was not preju-
diced in the remotest degree as to his substantial rights, or,
in other words, could not have been and, in truth, was not
thus deprived of a full and fair trial upon the merits of the
charge, is the statement of a proposition too obvious to admit

of legitimate discussion. To the contrary, it is plainly manifest that, the cause having been tried by both sides upon the theory that a plea of not guilty had been regularly entered, the defendant received the benefit of such a plea as fully and effectually as if the same had been formally interposed. The information was read and the statement thereupon made to the jury by the clerk that the defendant had entered thereto a plea of not guilty. Evidence was received in support of the claims of both sides. Counsel on both sides argued the case to the jury, the court instructed the latter as to the law pertinent to the issues tried and the jury returned the result of their deliberations upon the case to the court. Or, as is said in the case of *State* v. *Greene,* 66 Iowa, 11, [23 N. W. 154], (above referred to), where precisely the same question as the one under consideration here was before that court, "the defendant was permitted to introduce evidence to disprove the charge, and his counsel was permitted to argue the case to the jury on its merits, and the jury were required to determine it under the same rules which would have governed in its determination if the plea had been formally entered."

We cannot conceive of a case where section 4½ of article VI of the constitution could be applied with more propriety than it may be to the case at bar, and if by any course of reasoning it may be shown that it does not apply here, then, indeed, may it well be said that it would be difficult to apprehend precisely what purpose it was intended to subserve. In *People* v. *Carroll,* 20 Cal. App. 41, [128 Pac. 4], where the trial court gave an instruction embracing the language of subdivisions 6 and 7 of section 2061 of the Code of Civil Procedure, which it was claimed with a considerable show of reason was out of place in said case and calculated to mislead the jury to the prejudice of the defendant, this court applied the constitutional amendment in question, saying: "We think, however, the rule established by the amendment to our constitution . . . was designed to meet just such a case as this and should be applied at this time."

Our conclusion is that the error impelling the learned trial judge to set aside the verdict in this case could not under any possible view which may be taken of it have resulted in a miscarriage of justice. On the other hand, it appears clear to our minds, after an examination of the whole record, that,

to permit the order appealed from to stand undisturbed, would result in a distinct miscarriage of justice.

The motion of the respondent to dismiss the people's appeal from the order is denied.

The order appealed from is reversed, with directions to the court below to proceed with the rendition of judgment upon the verdict as returned.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 15, 1913.