[No. B103860. Second Dist., Div. Seven. Jan. 15, 1997.]

In re ABRAHAM GUTIERREZ on Habeas Corpus.

## COUNSEL

H. Russell Halpern, under appointment by the Court of Appeal, for Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendlin Pollack, Assistant Attorney General, Linda C. Johnson and Alene M. Games, Deputy Attorneys General, for Respondent.

## OPINION

JOHNSON, J.—In this habeas corpus proceeding petitioner asks this court to vacate his conviction for attempted murder after his subsequent prosecution for murder of the same victim and arising out of the same event resulted in three mistrials and a dismissal of all homicide charges. The prosecution filed the murder charges because the victim had died after petitioner's conviction for attempted murder. In an earlier opinion, this court ruled collateral estoppel did not bar petitioner from relitigating in the murder trial several issues the jury had decided in the attempted murder case. In this proceeding, we conclude the order allowing relitigation of those issues in the murder trial did not constitute a "new trial" of the attempted murder case and thus deny the writ.

### FACTS AND PROCEEDINGS BELOW

In 1990, the People charged petitioner with discharging a gun into an occupied motor vehicle (count 2) and the attempted first degree murder of Sandra Zarate (count 1). Petitioner's defense was mistaken identity. The jury found petitioner guilty of both counts but found the attempt to commit murder was not willful, deliberate and premeditated; the jury also found petitioner personally used a firearm and intentionally and personally inflicted great bodily injury on Zarate. The trial court sentenced petitioner to state prison for a total term of 18 years and 8 months. The judgment was

affirmed on appeal in *People* v. *Gutierrez* (1992) 10 Cal.App.4th 1729 [13 Cal.Rptr.2d 464].

Zarate died in January 1993, apparently from the wounds sustained in petitioner's attack. The People then filed an information charging petitioner with murder. On August 16, 1993, the People filed a written motion re collateral estoppel, seeking to preclude petitioner from litigating again the issues of his identity as the shooter and his intent to kill. The superior court, in finding in favor of the prosecution, stated: "I've seen the findings that [the jury] made, and . . . the jury has decided these issues, that the defendant had express malice aforethought, that he did the shooting. The only issue is whether or not what he did caused the death."

Petitioner sought a writ of prohibition with this court challenging the August 20, 1993, order. After we denied the order, petitioner sought review with the Supreme Court. On November 10, 1993, the Supreme Court granted review and transferred the matter to us with instructions to vacate our prior order and to issue an alternative writ. On April 15, 1994, in a published opinion titled *Gutierrez* v. *Superior Court* (1994) 24 Cal.App.4th 153 [29 Cal.Rptr.2d 376], we granted the writ of prohibition, directing the superior court to vacate its August 20, 1993, ruling, and to enter an order denying the prosecution's motion re collateral estoppel.

In the months that followed, petitioner was tried on second degree murder charges for the murder of Sandra Zarate at three separate trials. Each trial ended in a mistrial due to the jury's failure to reach a unanimous verdict. Following the third trial, the People moved for dismissal in the interest of justice. The trial court granted the motion.

Petitioner is presently in custody pursuant to a judgment and conviction in Los Angeles Superior Court (People v. Gutierrez (Super. Ct. L.A. County, No. KA004789).) He first sought relief by habeas corpus on July 9, 1996, filing a writ of habeas corpus with the superior court. The writ was denied. Petitioner filed this petition on July 22, 1996, challenging the validity of his prior conviction on grounds the subsequent trial for murder acted as a new trial on his prior conviction for attempted murder. Petitioner contends the subsequent proceedings operated to set aside the earlier conviction as a matter of law and therefore he should be released.

### DISCUSSION

In *Gutierrez,* v. *Superior Court, supra,* 24 Cal.App.4th 153, 169-170, we held the preservation of the petitioner's right to a jury trial outweighed policy considerations favoring application of the doctrine of collateral estoppel. We found inherent in petitioner's constitutional right to jury

trial, the right to present evidence and defenses he may not have presented at this prior trial. Therefore, the prosecution could not apply the doctrine to limit petitioner's ability to relitigate issues the jury adjudicated against him at his prior trial for attempted murder. (24 Cal.App.4th at pp. 169-170.) Petitioner maintains the necessary effect of our holding was to grant him a new trial on his prior conviction for attempted murder. We disagree.

### I. *This Court Did Not Order a New Trial by Allowing Petitioner to Relitigate Issues Determined at His Prior Trial*

"A new trial is a re-examination of the issue in the same court, before another jury, after a verdict has been given." (Pen. Code, § 1179.) Petitioner maintains that each time the charge for second degree murder was tried, the same issues of identity and intent were reexamined within the contemplation of Penal Code section 1179[1] In doing so, petitioner overlooks section 1181 which sets forth the necessary prerequisites to an order for new trial providing, "When a verdict has been rendered or a finding made against the defendant, the court may, *upon his application*, grant a new trial." (§ 1181, italics added.) ▮ With limited exceptions, the court may not grant a new trial on its own motion. (See *People* v. *Skoff* (1933) 131 Cal.App. 235, 240 [21 P.2d 118]; cf. *People* v. *Knutte* (1896) 111 Cal. 453 [44 P. 166] [court may set aside a verdict for insufficiency of the evidence and grant the defendant a new trial].) In any event, this court did not expressly order a new trial of the attempted murder case in its prior decision.

▮ We find it unnecessary to reach the issue of whether it was within this court's discretion to grant a new trial of the attempted murder at the time it considered the prior writ. What is clear is that we did not do so. By providing petitioner the opportunity to relitigate in his murder trial issues decided at his trial for attempted murder, it was neither our intent nor within the terms of the writ we issued to order a new trial for the prior conviction. In *Gutierrez* v. *Superior Court, supra*, 24 Cal.App.4th 153, we recognized some of the issues decided by the prior judgment may be identical to those sought to be relitigated at petitioner's subsequent trial for murder. We further acknowledged the risk posed to the integrity of the prior judgment by the possibility of an inconsistent verdict. However, we concluded the need for consistency in criminal trials is outweighed by petitioner's right to a full determination of the factual issues in the second trial. (24 Cal.App.4th at pp. 169-170, citing *Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 347 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995].) We also pointed out a contrary decision would undermine public confidence in the judicial system. (*Gutierrez* v. *Superior* Court, *supra*, 24 Cal.App.4th at pp. 169-170.)

---

[1]All section references are to the Penal Code unless otherwise noted.

After reviewing the issues presented for our consideration and a careful reading of our prior opinion, we find no support for the proposition a subsequent mistrial on the murder charge disturbs the prior conviction for attempted murder. Our prior ruling only held the first trial for attempted murder did not have collateral estoppel effect in the second trial for murder. Our research has not uncovered any case which holds a decision denying collateral estoppel in a second proceeding somehow invalidates or opens up for relitigation the judgment in the first proceeding. It is axiomatic the decision about whether issues resolved in the first case also determine issues in the second case only affects the litigation of the second case, not the integrity of the judgment in the first. Thus, in our prior opinion, we neither held nor intended our denial of collateral estoppel in the murder prosecution to influence in any way the validity of the attempted murder judgment.

We further observe we need not decide the more difficult issue in this case. The jury in petitioner's subsequent trial for murder did not acquit him of murder. Nor did they find the elements of murder or the issues previously decided to be untrue. None of the three juries could reach unanimous verdicts of guilt. There are many possible explanations for these three hung juries that having nothing to do with petitioner's guilt of the attempted murder. The state prosecuted a murder where the shooting occurred nearly five years earlier. Witnesses' faulty memories may have appeared less credible to the jury. Or the jurors might have believed petitioner was the gunman, but an intervening factor caused the death. Thus, in this case, a mistrial on the murder charge is not necessarily inconsistent with a conviction for attempted murder. As respondent aptly notes, verdicts should not be upset by speculative inquiry. (*Dunn* v. *United States* (1932) 284 U.S. 390, 393 [76 L.Ed. 356, 358-359, 52 S.Ct. 189, 80 A.L.R. 161].)

Petitioner directs our attention to *In re Crow* (1971) 4 Cal.3d 613 [94 Cal.Rptr. 254, 483 P.2d 1206], in support of the proposition our order granting his writ of prohibition was an order for new trial for attempted murder. In *Crow,* the petitioner filed a petition for writ of habeas corpus alleging he had been denied prompt sentencing in violation of section 1202. (4 Cal.3d at p. 617.) ■ In affirming the court's order granting a new trial, on its own motion, the reviewing court stated, "Having issued a writ of habeas corpus [citation], the court's power could not be limited to either discharging the petitioner from, or remanding him to, custody [citations], but extended to disposing of him' as the justice of the case may require'. [citations]." (*Id.* at p. 619.) The court reasoned that, "[i]nherent in the power to issue the writ of habeas corpus is the power to fashion a remedy for the deprivation of any fundamental right which is cognizable in habeas corpus." (*In re Crow, supra,* 4 Cal.3d at pp. 619-620, fn. 7.) Petitioner's reliance on

this case is unjustified. In *Crow,* the court affirmatively ordered a new trial of the very case in which the sentence was imposed not some prior or different case.

Having clarified the scope of our order prohibiting application of the doctrine of collateral estoppel, we turn our focus to the necessary effect of the order.

II. *Permitting Relitigation of the Issues at a Subsequent Trial for a Separate Offense Does Not Vacate by Operation of Law a Valid Prior Conviction*

Following this court's order in *Gutierrez* v. *Superior Court, supra,* 24 Cal.App.4th 153, petitioner suggests the state caused a reexamination in his murder trial of the same issues presented at his trial for attempted murder. Petitioner argues the subsequent proceedings, undertaken with the approval of the court, effectuated a new trial for attempted murder as defined in section 1179. According to petitioner, this places the parties in the position as if there has been no trial for attempted murder. (See § 1180.)

Our review of California law reveals no case directly addressing issues presented by this petition. However, exceptional cases do exist where it was determined orders by the court effectively granted a new trial without expressly doing so. We find these cases factually inapposite to the instant case.

In *People* v. *Tomsky* (1912) 20 Cal.App. 672 [130 P. 184], the trial court entered an order to set aside a conviction on the ground the defendant had never pled to the information under which he was prosecuted. The reviewing court noted that although no formal motion was presented, the effect of the order was to award the defendant a new trial. In reaching its conclusion, the court determined this effect was intended by the court as evidenced by the fact the court had ordered the defendant be admitted to bail and a time set for taking his pleas to the information.[2] (20 Cal.App. at p. 677.) No similar intention is evidenced in the instant case. This court did not order petitioner's prior conviction for attempted murder be set aside. Our order merely directed the trial court to vacate its prior order barring petitioner from litigating the issues of identity and intent. As explained above, this court finds no authority for the supposition an order denying collateral estoppel in

---

[2]The trial court's order was ultimately reversed after a determination the error impelling the judge to set aside the verdict could not have resulted in a miscarriage of justice. The issue of whether the order is within the power of the court was never reached. (*People* v. *Tomsky, supra,* 20 Cal.App. at pp. 685-686.)

a second prosecution somehow vacates the valid prior conviction as a matter of law.

A similar situation resurfaced in *People* v. *Rothrock* (1936) 8 Cal.2d 21. In that case, the state appealed from a trial court's order setting aside a conviction of the defendant for attempted murder and assault with a deadly weapon. The conviction was set aside on the grounds his initial plea was invalidated by a subsequent inquiry into his sanity. After the defendant was found to be sane, a trial was held and the defendant found guilty. The defendant filed objections to the verdict alleging, inter alia, the initial plea had been vacated by the inquiry into his sanity. The reviewing court determined as the order called for a reexamination of the same issues in the same court, it effectively granted a new trial.[3] (8 Cal.2d at pp. 23-24.)

In both of the aforementioned cases, the necessary effect of the court's order is to cause a new trial for the very same offense. In contrast, petitioner here was tried for the separate offenses of murder and attempted murder. ██ It is well settled the crime of murder encompasses different elements than the crime of attempted murder. (See *In re Saul S.* (1985) 167 Cal.App.3d 1061, 1067 [213 Cal.Rptr. 541]; see also *People* v. *Bivens* (1991) 231 Cal.App.3d 653, 662-663 [282 Cal.Rptr. 438], *Diaz* v. *United States* (1912) 223 U.S. 442, 449 [56 L.Ed. 500, 503, 32 S.Ct. 250], related issues.) To constitute attempt, there must be (1) proof of specific intent to commit a crime, and (2) a direct yet ineffectual act towards its commission. (*People* v. *Swain* (1996) 12 Cal.4th 593, 604-605 [49 Cal.Rptr.2d 390, 909 P.2d 994].) Thus, specific intent to kill is a necessary element of attempted murder, but not required for the crime of murder. Likewise, a homicide is a necessary element of murder, but not of attempted murder. (*People* v. *Breland* (1966) 243 Cal.App.2d 644, 650 [52 Cal.Rptr. 696].) ██ Therefore, petitioner's trial for murder was not necessarily a reexamination of the same issues presented to the court which found him guilty of attempted murder. This court merely prevented the prosecution from limiting petitioner's murder trial to the issue of causation.[4]

In his concurrence, Justice Woods expresses his inability to detect the difference between a new trial and the trial which followed our decision in

---

[3]The court went on to hold that pursuant to section 1181, the court could not grant a new trial on its own motion and the matter was remanded with instructions to enter a finding of guilty. (*People* v. *Rothrock, supra,* 8 Cal.2d at p. 24.)

[4]A jury instruction limited to the issue of causation would prejudice petitioner. "[A] jury so instructed could not help but infer the defendant had either admitted the other issues or another jury had already decided them against him. Either inference creates 'a strong . . . pull towards a guilty verdict . . .' [Citation.]" (*Gutierrez* v. *Superior Court, supra,* 24 Cal.App.4th at p. 170.)

*Gutierrez* v. *Superior Court.* He suggests the order "compelled" a full trial on all issues. In fact, our order denies application of the doctrine of collateral estoppel as to those issues requisite to a finding of guilt for the crime of murder. As we have pointed out, the crime of murder entails different elements than attempted murder and thus can be proven without relitigating the same issues. To the extent the People, as opposed to the court, caused a reexamination of the identical issues previously litigated, there can be no "new trial" since petitioner had not previously been charged or tried for the crime of murder. In so far as cases exist where the court was found to have implicitly granted a new trial, the court's order *required* relitigation of the same issues to establish guilt for the *same* crime thereby compelling a new trial.

Today we hold the same principles of maintaining integrity and public confidence in the judicial system that afforded petitioner the opportunity to relitigate some issues decided in his prior trial, preclude the interpretation he offers this court. Petitioner was not and could not have been charged with murder in the initial accusatory pleading.[5] When the victim later died, a homicide occurred creating a distinct offense in law and fact. (See *In re Saul S., supra,* 167 Cal.App.3d 1061, 1067; see also *People* v. *Bivens, supra,* 231 Cal.App.3d 653, 662-663; *Diaz* v. *United States, supra,* 223 U.S. 442, 449 [56 L.Ed. 500, 505], related issues.) In this situation, the integrity of and public confidence in the judicial system would not be furthered by forcing the prosecution to risk valid prior convictions for attempted murder in order to subsequently prosecute those same defendants for the separate offense of murder. On the contrary, sound judicial policy requires defendants who are fairly tried and convicted remain responsible for those crimes they were found to have committed.

### DISPOSITION

The petition for writ of habeas corpus is denied.

Lillie, P. J., concurred.

## WOODS, J., Concurring.—

### INTRODUCTION

I would deny the petition but for reasons entirely different from the majority. To explain, I shall synopsize the background facts; comment on

---

[5]Zarate was hospitalized in a coma after being shot in the head in June 1990. The same year petitioner was tried on various counts including attempted murder; he was convicted of attempted murder in January 1991. The victim died in January of 1993.

petitioner's "new trial" claim; consider the function, purpose, and effect of collateral estoppel; and demonstrate the error of *Gutierrez* v. *Superior Court* (1994) 24 Cal.App.4th 153 [29 Cal.Rptr.2d 376].

## BACKGROUND: SYNOPSIS[1]

On June 2, 1990, petitioner, other gang members, and friends conducted a memorial car wash for Phillip Juarez, a friend and fellow gang member recently fatally shot in front of his house. Petitioner believed Evergreen, a rival gang, had murdered him.

After the car wash, petitioner and about 30 to 40 others gathered at 1155 LeBorgne. While outside, petitioner saw a car slowly drive by. His friends yelled their gang name at the car and petitioner heard someone in the car yell "Evergreen." Petitioner was mad at the "Evergreen" car, so when it made a U-turn and returned he threw a beer can at it.

There were four teenagers in the car: Ismael Fernandez, Veronica Zarate, her 16-year-old sister Sandra, and 14-year-old Danny Reyes.

Ismael recognized petitioner. He had known him for two or three years, knew he was called "Boxer," had talked to him at school, Bassett High School, and said his looks were distinctive: tall, husky, large nose, and harelip.

When the beer cans struck their car Ismael sped away. A motorcycle, with a rider and passenger, pursued them. Petitioner was the passenger. After several blocks, the motorcycle got close to the car and petitioner fired a shot. The bullet struck Sandra Zarate in the head. The motorcycle fled and Ismael drove to a police station. Sandra was taken to a hospital where, in an irreversible coma, she would remain, kept alive by life support systems.

Police went to 1155 LeBorgne where Ismael identified petitioner. Petitioner was arrested and charged with the attempted murder of the still alive Sandra Zarate. At trial petitioner testified he remained at 1155 LeBorgne, did not see or get on a motorcycle, and did not shoot the victim. The jury convicted him of attempted murder, found he had personally used a firearm, and intentionally inflicted great bodily injury on Sandra Zarate.

On February 11, 1991, the trial court (Superior Court Judge William J. McVittie) conducted a sentence hearing. The prosecutor described the effects of the shooting on the Zarate family: they moved and had kept secret

---

[1]See *People* v. *Gutierrez* (1992) 10 Cal.App.4th 1729 [13 Cal.Rptr.2d 464] and People v. Gutierrez (Super. Ct. L.A. County, 1990, No. KA016953) (Evid. Code, §§ 452, 455, 459).

their new residence; Mrs. Zarate was afraid to leave the house and her two daughters did not go to school, tutors came to their home. They all feared petitioner and his gang.

Petitioner was sentenced and appealed. On November 20, 1992, we affirmed his conviction. (*People* v. *Gutierrez, supra,* 10 Cal.App.4th 1729.) On December 15, 1992, we denied his petition for rehearing and on March 11, 1993, our Supreme Court denied his petition for review.

On January 5, 1993, Sandra Zarate died. The district attorney then charged petitioner with her murder and urged the trial court to collaterally estop petitioner from relitigating issues final on appeal: that petitioner shot Sandra Zarate and intentionally inflicted great bodily injury on her. The trial court granted the motion and petitioner sought a writ of prohibition. On April 15, 1994, my colleagues granted the writ and, in their words, "afford[ed] petitioner a trial de novo." (*Gutierrez* v. *Superior Court, supra,* 24 Cal.App.4th 153, 170.)

On October 20, 1995, almost five and a half years after petitioner shot Sandra Zarate in the head, the first murder trial began. On November 16, 1995, the jury announced they were deadlocked and the trial court (Superior Court Judge David Milton) declared a mistrial.

On February 28, 1996, over five and a half years after petitioner shot Sandra Zarate in the head, the second murder trial began. On March 28, 1996, the jury announced they were deadlocked and the trial court (Superior Court Judge Candace Beeson) declared a mistrial.

On June 10, 1996, over six years after petitioner shot Sandra Zarate in the head, the third murder trial began. On July 1, 1996, the jury announced they were deadlocked, eight to four in favor of guilt. The trial court (Superior Court Judge Albert Matthews) declared a mistrial and granted the prosecutor's motion to dismiss.

This petition followed.[2]

---

[2]Prompted, petitioner notes, by Chief Justice Lucas's musing about "the numerous and formidable practical difficulties" (*People* v. *Fields* (1996) 13 Cal.4th 289, 307 [52 Cal.Rptr.2d 282, 914 P.2d 832]) if a defendant who had been convicted of a lesser included offense could thereafter be tried for the greater offense. Chief Justice Lucas wondered "what becomes of the first conviction if the second jury acquits on the greater offense without convicting on the lesser offense? A defendant would appear to have a good argument that he is entitled to the double jeopardy effect of this acquittal, notwithstanding the previous, now inconsistent, conviction on the lesser offense." (*Id.* at p. 307, fn. 5.)

*Petitioner's new trial claim.*

Small wonder petitioner claims *Gutierrez v. Superior Court* effectively granted him a new trial. And small wonder the majority disclaim any such intent (maj. opn., *ante*, at p. 1708) while acknowledging that "exceptional cases do exist where it was determined orders by the court effectively granted a new trial without expressly doing so." (*Id.* at p. 1710.)

Certainly, the trial *Gutierrez v. Superior Court* ordered was not a *used* trial. Nor a *fettered* trial. It was "a full trial on all issues" (*Gutierrez v. Superior Court, supra*, 24 Cal.App.4th at p. 169), and it was "a trial de novo." (*Id.* at p. 170.)

In what way a "new trial" would have differed from the trial ordered by *Gutierrez v. Superior Court*—the majority do not say and I cannot detect.

A "new trial" would have put in issue every element of the murder charge, including identity and malice aforethought (issues determined by the January 2, 1991, attempted murder guilty verdict, affirmed by *People v. Gutierrez, supra*, 10 Cal.App.4th 1729 and final on appeal) and so did the trial ordered by *Gutierrez v. Superior Court.*

At a "new trial" the court would instruct the jury "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt." (CALJIC No. 2.90.) Further, the court would instruct the jury that to convict the defendant of murder each of the following elements had to be proved beyond a reasonable doubt: that a human being was killed; with malice aforethought; by the defendant. (CALJIC No. 2.90.)

At the trial ordered by *Gutierrez v. Superior Court* the court, under the compulsion of *Gutierrez*, gave these identical instructions.

Finally, by compelling "a full trial on all issues" *Gutierrez v. Superior Court* permitted a successor jury to find petitioner not guilty of shooting Sandra Zarate in the head. Had they so found, would the majority allow the earlier, now inconsistent, guilty verdict to stand?[3] If not, then surely *Gutierrez v. Superior Court* did grant petitioner a "new trial."

Nevertheless, I find it unnecessary to decide whether the effect of *Gutierrez v. Superior Court* was to grant petitioner a "new trial" because, in my

---

[3] If so, can one imagine a more demeaning "justice" spectacle? Or perhaps, as with other spectacles, we have a tiebreaker: best out of three.

view, that decision constituted "a manifest misapplication of existing principles"[4] by permitting relitigation of collaterally estopped issues.

In sum, petitioner was not entitled to the bonus—whatever its nature or dimension—conferred by *Gutierrez* v. *Superior Court* and for that reason I would deny the petition.

### *Function, purpose, and effect of collateral estoppel.*

"Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings." (*Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995].) To apply the doctrine five threshold requirements must be satisfied.

"First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (51 Cal.3d at p. 341.)

Four policy considerations for the doctrine have been recognized. Judicial economy is "promoted in that court time will not be wasted retrying an issue of fact which has once been litigated." (*People* v. *Superior Court (Jackson)* (1975) 44 Cal.App.3d 494, 502 [118 Cal.Rptr. 702]; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 606 [25 Cal.Rptr. 559, 375 P.2d 439]; *People* v. *Taylor* (1974) 12 Cal.3d 686, 695 [117 Cal.Rptr. 70, 527 P.2d 622]; *Hoag* v. *New Jersey* (1958) 356 U.S. 464, 470 [2 L.Ed.2d 913, 919, 78 S.Ct. 829]; *Lucido* v. *Superior Court, supra,* 51 Cal.3d 335, 351.) "Second, the possibility of inconsistent verdicts is averted." (*People* v. *Superior Court (Jackson), supra,* 44 Cal.App.3d 494, 502; *Lucido* v. *Superior Court, supra,* 51 Cal.3d 335, 347; *Hoag* v. *New Jersey, supra,* 356 U.S. 464, 470 [2 L.Ed.2d 913, 919].) Third, is "the prevention of harassment through vexatious litigation." (*People* v. *Superior Court (Jackson), supra,* 44 Cal.App.3d 494, 503; *People* v. *Taylor, supra,* 12 Cal.3d 686, 695; *Lucido* v. *Superior Court, supra,* 51 Cal.3d 335, 351; *Hoag* v. *New Jersey, supra,* 356 U.S. 464, 470 [2 L.Ed.2d 913, 919].) Fourth, the doctrine "encourage[s] reliance on adjudication." (*Allen* v. *McCurry* (1980) 449 U.S. 90, 94 [66

---

[4]Law of the case is a procedural not jurisdictional doctrine (*England* v. *Hospital of Good Samaritan* (1939) 14 Cal.2d 791, 795 [97 P.2d 813]), concerns only issues of law not fact (*People* v. *Shuey* (1975) 13 Cal.3d 835, 842 [120 Cal.Rptr. 83, 533 P.2d 211]), and does not apply when there has been "a manifest misapplication of existing principles." (*People* v. *Shuey, supra,* 13 Cal.3d 835, 846; *Jeffries* v. *Wood* (9th Cir. 1996) 75 F.3d 491, 493.)

L.Ed.2d 308, 313, 101 S.Ct. 411]; *Lucido* v. *Superior Court, supra,* 51 Cal.3d 335, 355 (dis. opn. of Mosk, J.).)

The policy of avoiding contradictory verdicts deserves elaboration. As Chief Justice Lucas observed, "Public confidence in the integrity of the judicial system is threatened whenever two tribunals render inconsistent verdicts." (*Lucido* v. *Superior Court, supra,* 51 Cal.3d 335, 347; see *People* v. *Sims* (1982) 32 Cal.3d 468, 488 [186 Cal.Rptr. 77, 651 P.2d 321] [Inconsistent judgments "may undermine the integrity of the judicial system . . . ."]; *People* v. *Howard* (1988) 44 Cal.3d 375, 412 [243 Cal.Rptr. 842, 749 P.2d 279] ["inconsistent judgments . . . undermine the integrity of the judicial system"].) This is especially true when the first tribunal is a jury and their verdict is guilty.

As a civilized society we forgo personal vengeance and obey the law because we have faith in the criminal justice system. We look to and rely upon "the criminal trial process as the proper forum for determinations of criminal guilt and innocence." (*Lucido* v. *Superior Court, supra,* 51 Cal.3d 335, 350, fn. 11.) The importance we place upon the criminal trial process is reflected by the rights we confer upon the defendant, the burdens we impose upon the prosecution, and our "rigorous safeguards against unjust conviction . . . ." (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601, 606.) "A person when first charged with a crime is entitled to a presumption of innocence, and may insist that his guilt be established beyond a reasonable doubt. . . . Other constitutional provisions also have the effect of ensuring against the risk of convicting an innocent person. See, *e.g., Coy* v. *Iowa,* 487 U.S. 1012 [101 L.Ed.2d 857, 108 S.Ct. 2798] (1988) (right to confront adverse witnesses); *Taylor* v. *Illinois,* 484 U.S. 400 [98 L.Ed.2d 798, 108 S.Ct. 646] (1988) (right to compulsory process); *Strickland* v. *Washington,* 466 U.S. 668 [80 L.Ed.2d 674, 104 S.Ct. 2052] (1984) (right to effective assistance of counsel); [*In re*] *Winship* [397 U.S. 358 (25 L.Ed.2d 368, 90 S.Ct. 1068) (1970)] (prosecution must prove guilt beyond a reasonable doubt); *Duncan* v. *Louisiana,* 391 U.S. 145 [20 L.Ed.2d 491, 88 S.Ct. 1444] (1968) (right to jury trial); *Brady* v. *Maryland* [373 U.S. 83 (10 L.Ed.2d 215, 83 S.Ct. 1194) (1963)] (prosecution must disclose exculpatory evidence); *Gideon* v. *Wainwright,* 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733] (1963) (right to assistance of counsel); *In re Murchison,* 349 U.S. 133, 136 [99 L.Ed. 942, 946, 75 S.Ct. 623] (1955) (right to 'fair trial in a fair tribunal'). . . . All of these constitutional safeguards, of course, make it more difficult for the State to rebut and finally overturn the presumption of innocence which attaches to every criminal defendant." (*Herrera* v. *Collins* (1993) 506 U.S. 390, 398-399 [122 L.Ed.2d 203, 215-216, 113 S.Ct. 853]; *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,*

58 Cal.2d 601, 606 ["there are rigorous safeguards against unjust conviction, including the requirements of proof beyond a reasonable doubt [citation] and of a unanimous verdict [citation], the right to counsel [citation], and a record paid for by the state on appeal."].)

"Our courts are . . . forums for the discovery of truth." (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 533 [83 Cal.Rptr. 166, 463 P.2d 390]) and it is the jury's function to ascertain the truth. (*People* v. *Barton* (1995) 12 Cal.4th 186, 196 [47 Cal.Rptr.2d 569, 906 P.2d 531] [". . . the jury's truth-ascertainment function."].) The culmination of their efforts—a unanimous belief beyond a reasonable doubt—is a verdict of guilty.[5]

Such a verdict extinguishes the presumption of innocence (*Herrera* v. *Collins, supra,* 506 U.S. 390, 399 [122 L.Ed.2d 203, 216] ["Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears."]). If the trial was fair and the verdict final then "no injustice [is] done, when criminal defendants are estopped from relitigating issues determined in conformity with these safeguards." (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601, 606.)

After a fair trial and a guilty verdict final on appeal, the purpose of collateral estoppel is to insure that the defendant does *not* have another "fair trial." Inherently, collateral estoppel inhibits the next proceeding. It precludes a defendant from asserting claims previously rejected.

Accordingly, guilty defendants have been collaterally estopped from contesting a parole violation (*Morrissey* v. *Brewer* (1972) 408 U.S. 471, 490 [33 L.Ed.2d 484, 499-500, 92 S.Ct. 2593]), seeking theft losses from their insurers (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601) contesting a car forfeiture[6] (*People* v. *One 1964 Chevrolet Corvette Convertible* (1969) 274 Cal.App.2d 720 [79 Cal.Rptr. 447]), denying paternity (*People* v. *Majado* (1937) 22 Cal.App.2d 323 [70 P.2d 1015]), and denying having committed robbery, kidnapping and possession of a concealable weapon by an ex-felon when being tried for having committed murder during the commission of any or all of these felonies (*People* v. *Ford* (1966) 65 Cal.2d 41, 50 [52 Cal.Rptr. 228, 416 P.2d 132]).

As Justice Traynor said for a unanimous court, "Collateral estoppel applies to successive criminal trials" (*Teitelbaum Furs, Inc.* v. *Dominion Ins.*

[5]A *not* guilty verdict denotes only a reasonable doubt of guilt, not a determination of innocence.

[6]Even when the car owner had *not* been charged or convicted, only his son had been convicted of marijuana possession.

*Co., Ltd., supra*, 58 Cal.2d 601, 606) and, more recently, as Justice Kennard observed, "collateral estoppel is a two-way street." (*Gikas* v. *Zolin* (1993) 6 Cal.4th 841, 876 [25 Cal.Rptr.2d 500, 863 P.2d 745] (dis. opn. of Kennard, J.).)

*The errors of Gutierrez v. Superior Court (1994) 24 Cal.App.4th 153*

The errors of *Gutierrez* are fundamental and numerous. I cite only a few.

*Presumption of innocence.* The threshold error of *Gutierrez* is its assumption petitioner is to be presumed innocent both before and *after* his attempted murder conviction. The law is otherwise. (*Herrera* v. *Collins, supra*, 506 U.S. at p. 399 [122 L.Ed.2d at p. 216].) The Constitution guarantees the right to present a defense, to a fair trial by an impartial jury, to the presumption of innocence, to due process, and to proof beyond a reasonable doubt. But, it does not guarantee a defendant the right to exploit those guarantees over and over again to determine the same issue.

*Before* the January 2, 1991, guilty verdict petitioner was presumed innocent of shooting Sandra Zarate with malice aforethought and intentionally inflicting great bodily injury. *After*, he was not. (Comment, *Perjury by Defendants: The Uses of Double Jeopardy and Collateral Estoppel* (1961) 74 Harv. L.Rev. 752, 763, fn. 68 [". . . when a prosecutor seeks to use collateral estoppel a jury has already passed on the defendant's claims. The fact that it was a different jury at a prior trial does not seem to lessen the force of the contention that the defendant's right to trial by jury on every element of the crime has been respected."].)

After, he was presumed innocent only of causing her death—the sole issue not decided by the January 2, 1991, guilty verdict.

*Maintaining integrity and public confidence in the judicial system. Gutierrez* states "maintaining integrity and public confidence in the judicial system" will be promoted by requiring the prosecutor, over five years after the fact, to again convince twelve jurors beyond a reasonable doubt it was petitioner who shot and killed Sandra Zarate. (*Gutierrez* v. *Superior Court, supra*, 24 Cal.App.4th at p. 170.)

One can only wonder who this "public" is. The original jurors who were led to believe their verdict decided petitioner's guilt? Superior Court Judge Alfonso M. Bazan who granted the collateral estoppel motion? Superior Court Judges Milton, Beeson, and Matthews who, knowing better, were compelled to instruct jurors petitioner was presumed innocent of shooting

Sandra Zarate? Thirty-six jurors, from whom the truth was withheld, and who unsuccessfully labored to determine if petitioner shot Sandra Zarate? The thirty-four witnesses who testified at one or two or three or four trials from 1990 to 1996? Ordinary citizens knowing petitioner could be found guilty of shooting Sandra Zarate but allowed to deny it again and again and again—and ultimately get away with murder?

*Distinguishing People* v. *Ford, supra, 65 Cal.2d 41. Gutierrez* states *Ford* is distinguishable because it addressed the issue of collateral estoppel after, not before, trial. (*Gutierrez* v. *Superior Court, supra,* 24 Cal.App.4th at p. 166.) This sounds more like an insult than a distinction. It implies our Supreme Court evaluates a collateral estoppel jury instruction *not* on its content but its timing. If not yet given—then improper. If already given, then proper. Enough said.

*Gutierrez misunderstood the record. Gutierrez* states: "To the extent that he did not testify at his attempted murder trial and wishes to do so in the instant trial, the court's ruling would also preclude him from presenting evidence and defenses which, for whatever reason, may not have been presented at the prior trial." (*Gutierrez* v. *Superior Court, supra,* 24 Cal.App.4th at p. 169.)

First, petitioner *did* fully testify at his attempted murder trial, did present evidence, and did offer a defense: I didn't see or get on a motorcycle and I didn't shoot Sandra Zarate.

Second, for collateral estoppel purposes, it is irrelevant that a defendant chose not to testify. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601, 607.)

*Gutierrez would never apply collateral estoppel against a criminal defendant.* A fair reading of *Gutierrez* is it would never apply collateral estoppel against a criminal defendant. As such it is irreconcilable with *Teitelbaum, People* v. *Majado,* and *People* v. *Ford.*

CONCLUSION

For these reasons, quite different from the majority, I would deny the petition.

Petitioner's application for review by the Supreme Court was denied April 30, 1997. Kennard, J., was of the opinion that the application should be granted.